Matthew H. Livingston *v.* John W. Pettigrew and others.

Lansing.
7L 405
45ap363

(General Term, Third Department, November, 1872.)

An assignment running in the name of J. P., receiver, &c., and signed "J. P., receiver," contained a covenant that the assigned claims were due and unpaid. *Held,* that J. P.'s intention was to covenant officially, not individually.

Otherwise the intent to make a personal covenant should have been expressed.

Whether a receiver may not covenant, as receiver, that claims are due and unpaid, *quere.*

Having so covenanted, however, he is not liable personally on his covenant·

Cases in which executors, administrators and trustees have been held personally liable upon their covenants, distinguished. (Per Miller, P. J.)

Whether the covenant made, without prior agreement therefor, on giving a written assignment of the claims, and after the sale and the delivery of a bill of sale, without new consideration, is supported by any consideration, *quere.*

Motion, by the plaintiff, for a new trial upon a case, and exceptions ordered to be heard in the first instance at General Term.

The action was brought against the defendants to recover the amount of a judgment alleged to have been sold by the defendant, as receiver. The cause was tried, at the Albany Circuit, before the Hon. William L. Learned and a jury, in January, 1872. It appeared that upon the trial on the 20th of January, 1866, John Pettigrew, then deceased, was appointed, by this court, receiver of the Central Bank of the city of New York.

On the 12th of June, 1866, he proceeded to advertise for sale, by auction, all the personal estate of the bank.

On the 24th of July, 1866, the sale took place, when the plaintiff's agent attended and bid off, in the name of the plaintiff, twenty-two judgments against different individuals for the sum of $169, which was then paid, by cash and check, and a bill of sale was then executed and a receipt given by and in the name of Benjamin P. Fairchild, the

auctioneer. The judgment in this case, with two other items, was bid off for two dollars; and afterward, and on the 15th of August, 1866, the agent called on John Pettigrew and he executed an assignment, which was as follows.

" I, John Pettigrew, of the city of New York, receiver of the Central Bank of the said city of New York, in consideration of the sum of $169, to me in hand paid by Matthew H. Livingston, of the city of Albany, as such receiver have sold and transferred to the said Matthew H. Livingston and to his use and benefit the several judgments and claims mentioned and set forth in the annexed bill of sale of Benjamin P. Fairchild, auctioneer, of the city of New York, bearing date the 24th day of July, A. D. 1866, made by and under my direction, as such receiver aforesaid, to the said Matthew H. Livingston, and I hereby covenant that the said several judgments and claims are due and unpaid.

" In witness whereof, as such receiver, I have hereunto set my hand and seal, this 15th day of August, A. D. 1866.

"JOHN PETTIGREW [L. S.],

[Five Cent Rev. St. Canceled.]      " *Receiver.*"

On the 27th of August, 1866, the sale, by the receiver, was confirmed by an order of this court and a dividend made of the proceeds and the estate soon afterward settled up.

And on the 6th of September, 1867, an order was made confirming a report of the receiver and discharging him and his sureties from further duties or liabilities under the receivership.

The claim of the plaintiff was not presented till three years after the sale and one year after the death of John Pettigrew.

The auctioneer testified that he sold only the right, title and interest of the Central Bank, whatever they might be, and so announced at the time of the sale.

The defendants moved for a nonsuit upon the grounds:

" 1st. That the instrument in question purports to be the

act of Pettigrew, in his official character, as receiver, and his estate is not liable under it.

"2d. That there is no proof of an order of the court authorizing a sale of this property.

"3d. That the assignment introduced is without consideration, the annexed schedule and the bill of sale showing that the sale was made by Fairchild, and that no new consideration passed when the assignment was executed.

"4th. That the bill of sale purports to be a transaction between Fairchild and another, which was completed by payment upon the day of its date. The assignment is nearly a month later between different parties."

Plaintiff's counsel requested the court to submit the case to the jury. The court refused so to do, and granted the motion for nonsuit; to both of which rulings plaintiff excepted.

The court allowed the plaintiff sixty days to make a case, ordering the same to be heard in the first instance at the General Term.

Exceptions were taken by plaintiff, to the rulings of the court in the admission and rejection of evidence, which are referred to in the opinion.

*W. S. Hevenor*, for the plaintiff.

*A. J. Parker*, for the defendants.

Present—MILLER, P. J., POTTER and PARKER, JJ.

By the Court—MILLER, P. J. I think the nonsuit was properly granted. The plaintiff in this action seeks to recover upon the covenant of Pettigrew, whose estate the defendants represent, that the judgments and claims assigned were due and unpaid. The assignment is stated in the commencement as that of "John Pettigrew, of the city of New York, receiver of the Central Bank," &c., and was signed "John Pettigrew, Receiver." It is therefore apparent, upon the face of the

instrument, that all which Pettigrew intended to do was to make an assignment in his official capacity; and the covenant, as to the demands being due, must be considered, I think, as a mere act as receiver, and not as an individual act. Had the intent been otherwise, then a clause should have been inserted that he covenanted personally, or to that effect. As none such appears in the instrument, and it plainly shows on its face that the whole transaction was one performed by Pettigrew as an officer of the court, this is the only fair interpretation which can be placed upon it.

The liability, therefore, if any was incurred, was for the estate, upon a sale of its effects; and Pettigrew not only had no personal interest in it, but he did not assume any in the instrument itself.

If the covenant is valid, as the act of the receiver, then the remedy would be against the estate which Pettigrew represented.

A receiver is an officer of the court acting under its authority, and most generally by its order and direction, and I am not satisfied that it would be entirely beyond the scope of his powers, in some cases, to covenant that a certain amount was due upon an obligation. If such a covenant would add to the price of personal property exposed for sale, it perhaps might not be an excess of authority to make it, in view of the fact that it would materially promote the interests he had in charge.

In some cases it might become highly important to make representations as to the value and character of assets in his hands, which would render him liable, officially at least, and I am not prepared to say that a covenant of the character of the one contained in the assignment is entirely without authority and invalid.

But assuming that the covenant in question was void because the receiver exceeded his powers and that it did not bind the estate, the question arises, whether he thereby rendered himself personally responsible for a breach of it. I am inclined to think that he did not, and that the instrument itself, show-

Livingston *v.* Pettigrew.

ing that the act was done as receiver, it cannot, under any circumstances, be construed as a personal covenant.

The party who took the assignment knew all about its contents as they appeared, and as it is presumed he knew the law, it is fair to assume he knew also that the covenant was void upon its face, if such was the law. He therefore has no valid grounds for claiming that he has, in any way, been misled or deceived. He trusted to the receiver in his official capacity, understood that he acted as such, and upon no sound principle can it be claimed that under such circumstances the receiver should be personally liable. It is no answer to this position to say that the receiver should have informed himself, before the sale, whether any and what amount was due upon the judgment. It is to be assumed, in the absence of any proof to the contrary, that he acted in good faith, and so long as he only acted as receiver and not as an individual, it is also to be presumed that the purchaser only trusted him, and relied upon the covenant as one entered into by him in his official capacity.

There is no reported case which holds that a receiver is liable personally upon a covenant of this character.

The liability of an executor or administrator or a trustee, upon a covenant as such, rests entirely upon a different principle.

An executor or administrator represents an estate, while a receiver is an officer of the court, and the former are often made liable, because their agreements import a consideration or an admission of assets in their hands. (2 Williams on Ex'rs, 1515, 1516, and authorities cited; 9 Wend., 273; 13 id., 557.) So where an executor or administrator submits in broad terms to pay whatever shall be awarded, and the arbitrator awards that he shall pay a certain sum, he is personally liable to pay the award, whether he has assets or not. (5 Term Rep., 7.) This is for the reason that if he thinks fit to refer generally all matters in dispute to arbitration, without protesting against the reference being taken as an admission of assets, it will amount to such admission.

(2 Ch., 40; see also 1 Term, 691; 7 Term, 453.) This, however, may depend upon the terms of the submission and also of the award. (5 Term, 6.) An administrator or executor is only liable upon a note given for the debt of the deceased, when there are assets or forbearance was the consideration of the note. (*Bank of Troy* v. *Topping*, 9 Wend., 273.)

In this State it never has been held that they are liable, personally, upon a covenant in their representative capacity.

The counsel for the plaintiff has cited some cases from other States, which it is claimed sustain the principle that an executor or administrator may render himself personally liable upon his covenant.

The case of *Sumner, adm'r,* v. *Williams* (8 Mass. R., 162) is relied upon as upholding this doctrine. In this case the defendants, as administrators under the license of the court to sell the real estate of their intestate for the payment of his debts, sold an equity of redemption of which the testator was supposed to die seized, and in their deed they covenanted, in their capacity as administrators, that they, as administrators, were lawfully seized of the premises; that they were clear of all incumbrances except a mortgage; that they had in such capacity good right to sell, etc., and that, as administrators, they would warrant and defend the same, etc. And it was held, by a divided court, in an action against them upon the covenant of warranty, etc., after an eviction by a paramount title, that they were answerable personally on their covenant. SEDGWICK, J., delivered an able, strong and well reasoned opinion against the liability of the defendants; and the other two judges placed their opinions very much upon the grounds that the covenants were, from their nature and the circumstances, peculiarly of a personal character. At page 204, SEWALL, J., says: " The case at bar is an alleged breach of an express personal covenant, annexed to a conveyance of an interest, valuable in legal contemplation, of a value acknowledged by the consideration received for it by the defendants, for which their conveyance of it was made."

PARKER, J., at page 213, says: "Indeed, there are certain covenants in this deed which no one could imagine, for a moment, could be enforced except against the defendants in their private capacity. Such is the covenant that they were seized in fee simple of the estate sold, that they had good right to sell."

This is the only reported case which goes to such an extent; and the others which are cited do not sustain any such doctrine. If it be applicable to an administrator, which there is, in my opinion, strong reason to doubt, there is certainly no sufficient reason why it should apply to a receiver whose powers and duties are of entirely a different character, and who acts in a different capacity. The reasons for upholding the liability of an administrator personally, upon covenants made in a deed given under the especial authority of a court for a consideration of value, have no application to an assignment of a judgment sold by an auctioneer at a receiver's sale, without any condition as to covenants, and where it is quite apparent that a personal covenant was not only inapplicable to the case and unwarranted by the consideration paid or the circumstances, but, as the testimony shows, was not intended or contemplated by the parties. Even if the rule contended for may be applicable in some cases to the acts of administrators, I think it should not be extended.

I entertain considerable doubt whether there was a sufficient consideration for the assignment from Pettigrew. The sale was made by the auctioneer; the bill of sale made out in his name; the assignment, which I am inclined to think was not necessary to perfect the title, was executed more than twenty days after the sale, and no money was paid to Pettigrew personally. What he received was as receiver, for the benefit of the estate. Besides, there was no such condition attached to the sale, and no such terms made or exacted.

It is also questionable whether the damages, if any, are not merely nominal; and therefore this is not a case where the court should grant a new trial. But, passing by other

questions, it is enough that the receiver was not personally liable, to sustain the nonsuit.

The decisions of the court upon questions of evidence are not material, if I am right upon the main question discussed. The judgment must be affirmed, with costs.

Judgment affirmed.