LOUANIA CARDOT, as Executrix, etc., Appellant, v. ASHBEL H. BARNEY, Respondent.

An assignee or receiver in bankruptcy of an insolvent railroad corporation, who, as such assignee, is running and operating its road, in the absence of evidence that he assumed to act other than as assignee, or that he held himself out as a carrier of passengers other than as an officer of the court, is not liable in an action for negligence causing the death of a passenger where no personal neglect is imputed to him either in the selection of agents or in the performance of any duty, but where the negligence charged was that of a subordinate whom he necessarily and properly employed in compliance with the order of the court. (CHURCH, Ch. J., dissenting.)

*Rogers* v. *Wheeler* (43 N. Y., 598); *Sprague* v. *Smith* (29 Vt., 421); *Barter* v. *Wheeler* (49 N. H., 9); *Ferrin* v. *Myrick* (41 N. Y., 315); *Ballou* v. *Farnum* (9 Allen, 47); *Lamphear* v. *Buckingham* (33 Conn., 237); *Blumenthall* v. *Brainerd* (38 Vt., 402); *Paige* v. *Smith* (99 Mass., 395) distinguished.

(Argued November 17, 1875; decided November 30, 1875.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, setting aside a verdict and granting a new trial.

This action was brought to recover damages for the alleged negligent killing of plaintiff's testator, August Cardot.

It appeared that defendant was appointed assignee in bankruptcy of the Buffalo, Corry and Pittsburg Railroad Company. He was also, by order of the court, appointed special receiver of the estate, franchises, and effects of the corporation, with authority " to employ such assistants, operatives, mechanics, laborers and firemen, as he may deem necessary, to purchase such supplies, to borrow or hire such rolling stock, and to make such running arrangements into connecting lines as he shall deem necessary, and to operate the railroad of said company."

As the case states, plaintiff gave evidence tending to prove that at the time of the injuries mentioned in the complaint, and immediately previous thereto, the defendant, claiming to act as assignee, was running and operating the road mentioned

in the complaint as a carrier of passengers for hire, and that he transported such passengers over the said road.

" That defendant, so claiming to act as assignee as aforesaid, issued passenger tickets, bearing the name of The Buffalo, Corry and Pittsburg Railroad Company, for passage over and upon the said road, to be sold by the agents of the defendant. No tickets were issued in the name of the defendant."

That Cardot was a passenger on a train proceeding on said railroad, when the passenger coach in which he was riding was precipitated from a bridge and he was killed. That said accident was caused by the carelessness and negligence of the superintendent of said railroad, and of other persons engaged in operating and maintaining said road, all of whom were employed by said defendant, so claiming to act as assignee as aforesaid, but no evidence was given of any personal carelessness or negligence on the part of the defendant.

Defendant's counsel requested the court to charge, among other things, " that if the defendant, in the exercise of good faith and sound discretion, was operating the railroad and was not guilty of any personal negligence (as distinguished from negligence of his employes), he cannot be held in this action." The court refused so to charge, and defendant's counsel excepted.

The court charged, among other things, that it was to be assumed by them that the defendant was authorized to operate the railroad at the time the plaintiff's testator was killed, and that whether he was exercising a sound discretion in so doing was not a question for them to determine.

That the defendant, in operating said railroad, was bound to do so with the same degree of care, and was held to the same responsibility as the law ordinarily imposed upon common carriers of passengers by railway.

That it was not necessary, in order to maintain this action, to establish any personal want of care or other personal improper conduct on the part of the defendant.

To these portions of the charge the defendant's counsel excepted.

The jury rendered a verdict for plaintiff. Exceptions were ordered to be heard, at first instance, at General Term.

*Walter W. Holt* for the appellant. Defendant was a trustee and is bound by his contracts. (Bankr. Act, §§ 15–17; 1 Pars. Con., 102; Story's Eq., § 975 *a ; Duvall* v. *Craig,* 2 Wheat., 45 ; *Marvin* v. *Stone,* 2 Cow., 781 ; *Geyer* v. *Smith,* 1 Dal., 347; *Sumner* v. *Williams,* 8 Mass., 162 ; *Pinney* v. *Johnson,* 8 Wend., 500 ; *Ferris* v. *Myrick,* 41 N. Y., 315 ; *Ballou* v. *Farnham,* 9 Al., 47 ; *Rogers* v. *Wheeler,* 2 Lans., 486 ; Deacon on Bankruptcy, 802 ; *Edge* v. *Parker,* 8 B. & C., 701 ; *Tennant* v. *Strachan,* 1 M. & M., 378 ; *Harrison* v. *Walker,* Peake, 111 ; *Clark* v. *Spence,* 4 Ad. & El., 448 ; *Kinder* v. *Howarth,* 2 Stark., 354 ; *Sprague* v. *Smith,* 29 Ver., 421 ; *Barter* v. *Wheeler,* 49 N. H., 9 ; *Blumenthal* v. *Brainard,* 38 Ver., 402 ; *Paige* v. *Smith,* 99 Mass., 395 ; *Lamphear* v. *Buckingham,* 33 Conn., 237.) Defendant was responsible for any injury resulting from the want of skill or want of care of the person employed. (*Blake* v. *Ferris,* 1 Seld., 48 ; *City of Buffalo* v. *Holloway,* 3 id., 493 ; *Peck* v. *Mayn,* 4 id., 222 ; *Kelley* v. *May,* 4 Kern., 432 ; *Rogers* v. *Wheeler,* 43 N. Y., 598 ; *Ballou* v. *Farnam,* 9 Al., 52 ; *Michael* v. *Stanton,* 3 Hun, 462 ; *Higgins* v. *W. T. Co.,* 46 N. Y., 23 ; *Metz* v. *Buff., C. and P. R. R. Co.,* 58 id., 60.) The relation of trustee once established must pervade every transaction respecting the trust property until that relation is terminated. (*De Bevoise* v. *Sanford,* 1 Hoff. Ch., 192 ; *Cruger* v. *Halliday,* 11 Paige, 314 ; *Diefendorf* v. *Spraker,* 6 Seld., 246 ; *Andrew* v. *N. Y., B. and P. B. S.,* 4 Sand., 175 ; *Shepherd* v. *McEvers,* 4 J. Ch., 136 ; *Icard* v. *Duff,* id., 368 ; *Newton* v. *Bronson,* 3 Kern., 587 ; *Beekman* v. *Bonsor,* 23 N. Y., 298 ; Perry on Trusts, §§ 401, 402 ; *Moven* v. *Hays,* 1 J. Ch., 339 ; *In re Lichfield,* 1 Atk., 87.) A public officer is responsible for the negligence of subordinates employed, voluntarily or privately, and paid by him and responsible to him. (Am. L. Cas., 621 ; Whart. on Neg., § 288 ; *Lane* v. *Cotton,* 1 Ld. Ray., 646 ; *Newell* v. *Wright,*

3 Al., 166; *Shepherd* v. *Lincoln*, 17 Wend., 249.) Defendant's liability springs from a breach of legal duty and the cause of action rests in tort. (*Orange Bk.* v. *Brown*, 3 Wend., 158; *Hollister* v. *Newland*, 19 id., 234; *Burkle* v. *Ells*, 4 How. Pr., 288; *Flynn* v. *H. R. R. Co.*, 6 id., 308; *At. Mut. Ins. Co.* v. *McLoon*, 48 Barb., 27; *Nolton* v. *W. R. R. Co.*, 15 N. Y., 444; *Merritt* v. *Earle*, 29 id., 115; *P. R. R. Co.* v. *Derby*, 14 How. [U. S.], 484; *S. World* v. *King*, 16 id., 469; *Wilton* v. *M. R. R. Co.*, 107 Mass., 108; *Stevens* v. *Armstrong*, 2 Seld., 435; *Ballou* v. *Farnum*, 9 Al., 52.) Public officers are liable for injuries to third persons when they act, or omit to act, contrary to their duty. (*Adsit* v. *Brady*, 4 Hill, 630; *Robinson* v. *Chamberlain*, 34 N. Y., 389; *Hicks* v. *Dorn*, 42 id., 47; *Hover* v. *Barkhoff*, 44 id., 113; *Clark* v. *Miller*, 54 id., 528; *Amy* v. *Suprs.*, 11 Wall., 136; *Tracy* v. *Swartwout*, 10 Pet., 80; *Koontz* v. *North. B.*, 16 Wall., 186.) The same rule applies to corporations. (*Storrs* v. *City of Utica*, 17 N. Y., 104; *Moore* v. *Westervelt*, 27 id., 234; Story on Ag., § 320; *In re Sheritts*, 2 Hogan, 192; *Salway* v. *Salway*, 2 R. & M., 215; *Parker* v. *Browning*, 8 Paige, 388; *Utica Ins. Co.* v. *Lynch*, 11 id., 520; *Blumenthal* v. *Brainerd*, 38 Ver., 402; *Paige* v. *Smith*, 99 Mass., 395.)

*Sherman S. Rogers* for the respondent. The ordinary relation of master and servant did not exist between defendant and the employes and he was not liable for their negligence. (S. & R. on Neg., § 176, note *c*; *Keenan* v. *Southworth*, 110 Mass., 474; *Ferrin* v. *Myrick*, 41 N. Y., 315.) Defendant in operating the railroad possessed the same immunity from personal liability that a general superintendent or the members of a board of directors would have enjoyed. (Bump Bkcy., § 37, p. 575, note, and *c. c.*; *Adams* v. *B. and H. R. R. Co.*, 4 Barb., 99; *Sweatt* v. *B. and H. R. R. Co.*, 5 id., 234; *In re Cal. Pac. R. R. Co.*, 11 N. B. R., 193; *Ammant* v. *A. and P. Tr. Co.*, 13 S. & R., 210; A. & A. on Corp., § 191, note, and *c. c.*; *Metz* v. *B., C. and P. R. R. Co.*, 58 N. Y., 61.)

ALLEN, J. The defendant is sought to be made liable for the acts and neglects of another, upon the doctrine of *respondeat superior*.

The action can only be maintained by reason of the relation of master and servant between the defendant and the superintendent of the road; and, if that relation existed, it resulted solely from the fact that the defendant had, as receiver and assignee in bankruptcy of the property and franchises of the bankrupt corporation, the management and operation of the railroad, the employment of the necessary servants and agents, with the power to dismiss and change them as he pleased or as should be necessary. The principle that those who in the transaction of their business avail themselves of the services of others, of whose acts they have or may have the benefit, shall also be answerable for acts done in the course of the agency, is well settled, and as applied ordinarily the doctrine is very familiar. The difficulty is in applying the principle to cases where the employer occupies a representative or official capacity and has no individual or personal interest in the property or the business in which the subordinate is employed. The action is not upon contract express or implied, but for negligence, and would lie as well at the suit of any other person as in behalf of a passenger, if the neglect of the superintendent is imputable to the defendant.

I have met with no adjudication directly in point in support of the action; we are left to dispose of the questions presented upon the reason of the maxim relied upon.

It was urged upon us at the argument, that unless the defendant was liable the plaintiff was remediless, and, therefore, the action should be sustained. But this argument cannot avail. It has been repeatedly said by learned judges, in like cases, that it proves nothing; and there are many instances in which individuals, injured by the acts of agents, are without remedy — as is the case of injuries incurred by the acts of the employes and agents of public officers — with one or two exceptions, which rest upon peculiar reasons not

applicable to the present action.   Here no personal neglect is imputed to the defendant, either in the selection of agents or the performance of any duty; constructive negligence, by the act of a superintendent, necessarily and properly employed by him, is relied upon.   Public officers performing their duties through the agency and with the assistance of subordinate agents employed by them, whether acting gratuitously or for a compensation, are not answerable for the neglects or wrongful acts of their subordinates.   When acting for a compensation they are regarded as being paid for the services rendered and not for taking the hazard of the acts of those necessarily employed by them.   (*Lane* v. *Cotton*, 1 Lord Mansf., 646; S. C., 1 Salk., 17; *Whitfield* v. *Lord Ledespencer*, Cowp., 754; *Hall* v. *Smith*, 2 Bing., 156; *Duncan* v. *Findlater*, 6 Cl. & Fin., 894.)   Sheriffs are an exception to the rule, for the reason that the poundage and other fees to which they are entitled for acts done by their deputies is deemed a just equivalent for their responsibilities.   (*Hall* v. *Smith, supra.*)   In the performance of their ministerial duties sheriffs employ such and so many deputies as they please and receive the compensation for their services, having at all times the supervision and control of their acts; and it may well be said that the acts of the deputy are performed for and in the business of the sheriff and for his benefit. The position of the defendant and his relation to the agents employed by him are not, in any respect, analogous to the position and relation of the sheriff to those acting for him.

The plaintiff, in her complaint, charges that the defendant was possessed of and was the owner of the railroad, and, as such, was a carrier of passengers for hire; and if that averment had been proven, the case would have been very different from that made by the evidence.   The defendant was not individually the owner, or possessed of the property; he had neither a general or special property in the road or its earnings.   The property was in the court for management and administration; and the defendant was an officer of the court, obeying its orders and carrying out its directions.   His

relation to the road and its operation was entirely official, and he had no interest in or control over the earnings, and was removable at the pleasure of the court. He was powerless to protect himself against the hazard of the acts of those he was compelled to employ. His position was analogous to that of a public officer charged with public duties, in the performance of which he is compelled to act in part by others. It is a great hardship, in such cases, to impose upon them the hazards and responsibilities which attach to individuals acting by agents appointed for their own convenience and profit. It would be different if the defendant had sought to do by others that which he was expected and was competent to do in person. But such was not the case. The employment of agents was a necessity, and expressly directed by the court; and if in the performance of this part of his duty he was prudent, and selected only competent agents, he had discharged his full duty, and ought not to be held to guarantee the acts of the agents employed. In other words, unless some imperative rule of law exists to the contrary, the defendant should only be held to answer for his own acts and neglects.

There is a substantial agreement of judges as to the reason of the rule making masters liable for the acts of their servants, although in the application of it there may have been differences of opinion, and occasionally room for doubt in border cases. BEST, Ch. J., in *Hall* v. *Smith* (*supra*), says: " The maxim of *respondeat superior* is bottomed on this principle, that he who expects to derive advantage from an act which is done by another for him must answer for any injury which a third person may sustain from it," thus making the benefit and liability reciprocal. The principle was recognized in *Bush* v. *Steinman* (1 B. & P., 404), and the defendant held liable for the reason that the work was carried on for his benefit. Lord BROUGHAM, in *Duncan* v. *Finlater* (*supra*), places the liability upon the ground that what is done by the agent being done for the benefit of the principal, and under his direction, he should be responsible for the consequences of doing it. *Scott* v. *Mayor of Manchester* (2 H.

& N., 204), was distinguished from *Hall* v. *Smith* by the fact that the corporation derived a profit from the carrying on the works. *Rogers* v. *Wheeler* (43 N. Y., 598); *Sprague* v. *Smith* (29 Vermont, 421); *Barter* v. *Wheeler* (49 N. H., 9), proceed upon the same ground, that the defendants were the owners of the roads, and were bound personally by their contracts; and that the fact was unimportant that they were trustees and acted in a representative capacity. The actions were upon contracts made by the defendants, and, as in the case of executors and administrators, they were held to answer for them. (*Ferrin* v. *Myrick*, 41 N. Y., 315.) The legal title to the roads was in the defendants, and they operated them as proprietors, and their liability legitimately resulted from their proprietorship, although the title was in trust for others. As said by Judge PECKHAM, in *Rogers* v. *Wheeler* (*supra*), they were in no sense receivers or officers of the court. They had assumed to operate the roads, and had made contracts with the public in the course of that business, and there was no principle or policy that would shield them from liability if they failed to perform their engagements. *Barter* v. *Wheeler* (*supra*), was decided upon the same views of the position of the defendant. *Ballou* v. *Farnum* (9 Allen, 47), and *Lamphear* v. *Buckingham* (33 Conn., 237), were actions against trustees and mortgagees in trust for the bondholders in possession of and operating the roads as such trustees and mortgagees, to recover for injuries · sustained by reason of the negligence of persons employed by them. The defendants were held liable. They were regarded as the owners of the roads, and the real principals, receiving the earnings, and having the benefit of the services of the employes. DEWEY, J., in *Ballou* v. *Farnum*, held that the defendants had made themselves liable as principals, by the position they had voluntarily assumed, and must take the responsibility, looking for their indemnity to the earnings of the road. The employes were the servants of the defendants, operating the roads in virtue of the title and possession acquired under their mortgages; and whether a

road is operated by mortgagees in possession, trustees, lessees or intruders, is not material, so long as they assume to operate the road and take the earnings either for themselves or those they represent. *Blumenthall* v. *Brainerd* (38 Vt., 402), was an action upon a contract for the carriage of goods, the defendants being receivers of the road by appointment of the Court of Chancery. A verdict passed against the defendants, but upon exceptions taken a new trial was granted. The court, in considering the question of liability, say that the plaintiff's evidence tended to show that the defendants were managing and controlling a long line of railroad, and conducted and held themselves out as common carriers over that line; and add : " If, in fact, they were common carriers over that railroad, we think that it is no defence to an action at law for a breach of duty or obligation, arising out of business intrusted to them in that relation, that they were running and managing the line of railroad as receivers under an appointment of the Court of Chancery." The court regarded the assumption by the defendants of the extraordinary responsibilities of common carriers as not incompatible with their duties and responsibilities as receivers, and held them to their contracts. It would seem that the business of a carrier was not regarded as within the limits of the duties of the defendant, as receiver, although consistent with that position. The court did not intimate that, in all respects, and in the absence of any contract, a receiver would be subject to all the responsibilities of an owner or proprietor of the road. On the contrary, it is said, " as between a receiver and the parties interested in the trust, the receiver would be responsible for negligence; but he might be liable in a larger or stricter degree of responsibility to other parties." *Paige* v. *Smith* (99 Mass., 395), without affirming the soundness of the decision of the case last cited, followed it, in an action against a receiver appointed by the Court of Chancery of the same State, on the ground that it was impossible to accord to the defendants an exemption from the ordinary common-law liabilities of common carriers more extensive than they are

allowed in the State in which they were appointed. The statement in this record is, that the defendant claimed to and held himself out as operating the road in his official capacity as receiver and assignee in bankruptcy, and not otherwise; and it is not sought to charge him upon a contract in any form.

There is good reason that one employing another in his business should be responsible for his acts. The maxim *qui facit per alium facit per se* is in such case properly applied, and all the legal consequences should follow; but I know of no principle upon which a receiver or other officer of a court, merely obeying the orders of the court, having no interest in the prosecution of the work and deriving no profit from it, should be answerable except for his own acts and neglects. The present defendant was expressly authorized to employ all necessary assistants and laborers and operate the road. In the employment of subordinates as well as in the other acts connected with the operation of the road, he acted officially and as the representative of, and by orders from the court, and was only held to diligence and good faith in the performance of any act which he was authorized to do. There is no evidence that he at any time assumed to act other than as receiver or assignee, or held himself out as a carrier of passengers, save as an officer of the court.

If this were otherwise, the law only allows a recovery for the death of a person when caused by some wrongful act, neglect or default; and a party can only be made answerable when the act or neglect is in law his act or neglect. (Laws of 1847, chap. 450.) The defendant and the superintendent, by whose fault the death of the testator was caused, were in the same employ, both acting by the same authority; and the fact that the latter was subordinate to the former by no means makes him responsible for his acts; the superintendent or other general agent of a railroad, who by authority of the corporation employs and discharges the subordinates, is not the master so as to be made responsible under the doctrine of *respondeat superior*.

I am for affirming the order granting a new trial and giving judgment absolute for the defendant, as stipulated.

All concur; except Church, Ch. J., dissenting, and Folger, J., not voting.

Order affirmed, and judgment accordingly.