any kind, etc., shall be erected or permitted on the land. If it was intended that no shop or store of any character should be allowed, why was it not so written? The very fact that certain business uses are expressly forbidden indicates that other business uses of a different character are permitted. The rule is that these covenants must be strictly construed against the grantors. Duryea v. Mayor, etc., 62 N. Y. 592; Blackman v. Striker, 142 N. Y. 555, 37 N. E. 484. To interpret this covenant as forbidding the use of the property for any business purposes would be an unwarrantable extension of its terms. In no event would the erection of a flat or tenement house be a violation of the covenant against erecting anything but dwelling houses. Sonn v. Heilberg, supra. If, after the buildings are erected, the defendant permits their use to affect injuriously the use, occupation, or value of adjacent premises, in violation of the covenant, that may be enjoined; but this provision of the covenant goes only to the use of the buildings or structures, and not to the right of the defendant to erect them. We cannot say, as a matter of law, that the presence of shops and flats will necessarily depreciate or injure neighboring property. There can be no question as to the efficacy of the restriction against building within 20 feet of the line of the avenue. The defendant denies that he has any intention to build within this limit, and we assume it was on this ground that the injunction was entirely dissolved. If at any time hereafter he threatens to violate the covenant in this respect, the plaintiff may apply ex parte for an injunction.

The order appealed from should be affirmed, with $10 costs and disbursements, but with leave to the plaintiff at any time to apply for an order restraining the defendant from building within 20 feet of Twelfth avenue. All concur.

---

### SAGER MFG. CO. v. SMITH.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. RECEIVERS — AUTHORITY TO PURCHASE MATERIAL — PURCHASE IN FOREIGN STATE.

A receiver of a manufacturing company was authorized to continue the business as formerly conducted, or as in his judgment might be necessary to preserve its outstanding contracts from loss, and to enable him to collect accounts due or to become due. *Held*, that he was authorized to purchase a consignment of saddles to complete bicycles contracted for before his appointment.

2. SAME—INDIVIDUAL LIABILITY.

Where a receiver is authorized to continue the business and make purchases, he may make them in the state of his appointment, or any other state, without being personally liable, if he discloses his character and source of authority.

Appeal from trial term, Monroe county.

Action by the Sager Manufacturing Company against Frank Sullivan Smith. There was a judgment for plaintiff, and defendant appeals. Reversed.

The action was commenced on the 31st day of December, 1898, to recover for goods sold to the defendant, and for which it is alleged he became per-

sonally liable. The facts are not in dispute. The plaintiff was a domestic corporation engaged in the manufacture of bicycle supplies at Rochester, N. Y. The Worcester Cycle Manufacturing Company prior to the 30th day of June, 1897, was a corporation engaged in manufacturing bicycles at Worcester, in the state of Massachusetts. On said 30th day of June, 1897, the defendant was appointed receiver of the Worcester Cycle Company by the United States circuit court for the district of Massachusetts, and as such receiver took possession of its factory and plant, and entered upon the discharge of his duties as such receiver. Among other things, the order appointing the receiver contained the following: "The said receiver is hereby fully authorized and directed to take immediate possession of all and singular the property above described, wherever situated or found, and to collect all accounts and sums due or to become due to the Worcester Cycle Manufacturing Company, and for that purpose to carry on and continue the business of said defendant company as the same is now carried on, and so far as may be necessary to preserve its rights under its contracts, acting in all things under the order and direction of the court. * * * Said receiver is hereby fully authorized to continue to operate and carry on the business of the defendant cycle company in such manner as the same is now conducted, or in such manner as will, in his judgment, produce the most satisfactory results, so far as may be necessary for the preservation from loss of the outstanding contracts of said defendant cycle company, and to collect and receive all the income therefrom, and all the debts due said company of all kinds, and for such purpose is hereby vested with full power, at his discretion, to employ and discharge, and fix the compensation of, all such officers, attorneys, managers, superintendents, agents, and employés as may be required in the discharge of his trust, with the approval of one of the judges of this court. * * * Said receiver shall from time to time, out of the funds coming into his hands from the operation of the property and otherwise, pay the expenses of operating the same and executing his trust, and all taxes and assessments upon the said property or any part thereof." The defendant, as receiver, on the 18th day of April, 1898, ordered from the plaintiff 1,500 cycle saddles, to be shipped to the Worcester Cycle Manufacturing Company, Worcester, Mass.; 750 to be shipped at once, and 750 two weeks later. Such order was signed: "Worcester Cycle Mfg. Co. Frank Sullivan Smith, Receiver. Geo. S. MacDonald, Purchasing Agent." It was conceded that MacDonald had authority from the receiver to make the purchase in question. Seven hundred and fifty of the saddles ordered were shipped on the 21st and 22d of April, 1898, and were duly paid for. The other 750 saddles were shipped on the 29th and 30th of April, 1898, and have not been paid for. The agreed price of such 750 saddles was $225, no part of which has been paid. All the saddles were shipped as directed in said order. All communications which passed between the parties relating to the purchase of saddles were addressed to or signed by "Frank Sullivan Smith, Receiver." It is apparent that, when the order for saddles was placed with the plaintiff, it knew the purpose for which they were wanted, that the defendant was receiver of the Worcester Cycle Manufacturing Company, and that he made the purchase as such. The plaintiff delivered the saddles to him, as such receiver, at the place named in the order.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

Charles J. Bissell, for appellant.

Isaac Adler, for respondent.

McLENNAN, J. But two questions are presented upon this appeal: First. Was the defendant authorized, by the order of the court appointing him receiver, to make the purchase in question? Second. If the defendant acted within the scope of the authority conferred by the order appointing him receiver in making the purchase in question, and fully disclosed the character in which he assumed to act, did he incur a personal liability?

A receiver has no power, unless expressly authorized by the court appointing him, to incur any expense on account of property in his hands, except such as is absolutely necessary for its preservation. Vilas v. Page, 106 N. Y. 439, 13 N. E. 743. The decree appointing the defendant receiver expressly authorized him "to carry on and continue the business" so far as necessary to enable him to collect the accounts and sums due or to become due. This provision clearly authorized the defendant to fill any contracts which the cycle company had entered into, and which were partially performed, to the end that the contract price might become due and collectible. In order that such contract price should become due and payable, it was undoubtedly necessary, in certain instances, to furnish additional parts of, or even additional bicycles complete, and to do this it was necessary that the business should be continued. Unless the clause in question was intended to enable the receiver to meet just such a condition of things, it is meaningless. Again, the decree provides:

"Said receiver is hereby fully authorized to continue to operate and carry on the business of the defendant cycle company in such manner as the same is now conducted, or in such manner as will, in his judgment, produce the most satisfactory results, so far as may be necessary for the preservation from loss of the outstanding contracts by said defendant cycle company."

By this clause, also, we think the court intended to make provision for completing at least the contracts which the cycle company had entered into, and which it had partially performed, and intended to authorize the receiver to complete such contracts, in order that he might be in a position to demand and collect the contract price. If the cycle company had entered into a contract by which it had bound itself to furnish, on or before a certain date, 1,000 wheels, at an agreed price, to become due and payable only upon the delivery of the entire number of wheels, notwithstanding two thirds of the bicycles had been delivered at the time the receiver was appointed, no part of the contract price could be recovered by him until the other third of the bicycles were delivered. To meet such a contingency he was authorized to carry on the business, in order that he might furnish the remaining bicycles called for by the contract, and thus be in a position to demand and enforce payment for the whole. By still another clause in the decree the receiver was authorized from time to time, out of the funds coming into his hands from the operation of the property and otherwise, to pay the expenses of operating the same. It would be folly to say that the receiver was given authority to carry on the business of manufacturing, for the purpose of enabling him to collect moneys which were due to the cycle company, or which should become due at a future time, without any further act on the part of the cycle company. It would be equally meaningless to authorize the receiver "to carry on and operate the business so far as necessary for the preservation from loss of the outstanding contracts," unless there were contracts in such condition that additional work or additional material were required in order to make such contracts available as an asset in the receiver's hands. Considering the nature of the property purchased, the character of the business of the insolvent corporation, and the language of the decree, the presumption arises that the

purchase was made in obedience to the order of the court, and for the purpose intended by the court, rather than that it was made for a purpose not contemplated by the decree.

We conclude that the defendant was expressly authorized by the decree appointing him to purchase the saddles in question; that he, in effect, informed the plaintiff, by the order for the saddles itself, that he was receiver of the Worcester Cycle Manufacturing Company, that it was located in a foreign jurisdiction, that the goods were to be used in such foreign jurisdiction, and that he desired to purchase them as receiver of such foreign corporation. With that information, the plaintiff accepted the order, and shipped the goods to the defendant as receiver, and delivered them to him at the factory of the corporation of which he was receiver. A receiver of a foreign corporation, domiciled in a sister state, has the right to enter into a contract for the purchase of goods in this state, and relieve himself from personal liability; and the plaintiff had the right to sell its goods to the receiver of a foreign corporation, incorporated and doing business under the laws of a sister state, and to absolve such receiver from all personal liability on account of such sale. This is precisely what the parties to the transaction in question did, unless there is some principle of law applicable to contracts made by receivers which overturns the rules which ordinarily control such contracts, and imposes additional or a more strict liability when a receiver is a purchaser than when the purchase is made by an individual. In case an agent makes a purchase of property as such,—discloses the name of his principal for whom the purchase is made and for whom he is acting,— no personal liability attaches, no matter in what jurisdiction such purchase is made, and no matter where the goods are to be delivered, if the place of delivery is specified in the contract. If the defendant in this case had said to the plaintiff: "I am the agent for a corporation doing business in a sister state. I wish to purchase goods for it as such agent, and desire you to ship the goods which I may purchase to such corporation,"—in case of a sale personal liability on the part of the agent would not be pretended, provided only the defendant had authority to represent such corporation. Instead, in the case at bar the defendant, almost in so many words, said: "I represent the circuit court of the United States for the district of Massachusetts, as receiver of a corporation over which such court has jurisdiction. I am directed or authorized by such court to buy goods for the purposes of such corporation, to be used within the state of Massachusetts, and I desire to purchase your goods." The plaintiff assents, and ships the goods to the defendant, as receiver, and into the state of Massachusetts.

In the case of Livingston v. Pettingrew, 7 Lans. 405, it was sought to hold a receiver personally liable on his covenant as receiver that a certain amount was due on a claim sold by him. The plaintiff was nonsuited, and the court said:

"He [the plaintiff] trusted to the receiver in his official capacity,—understood that he acted as such,—and upon no sound principle can it be claimed that under such circumstances the receiver should be personally liable."

In Beach, Rec. § 305, it is said:

"The receiver is the mere officer or instrument of the court in the preservation and operation of the property, and any acts of his not within the scope of the authority of the order appointing him, and not otherwise ordered by the court, do not bind the court. * * * This is the application of the principle which declares and fixes the personal liability of an agent who enters into a contract with a third person without the authority of the principal. * * * It produces the correlative, that, when a receiver acts within the scope of his authority as given by the court, he incurs no `personal liability. * * * Under no circumstances does a receiver incur any personal liability when he acts in strict conformity with the directions of the court, where it has jurisdiction to make the order."   High, Rec. § 272; Smith, Rec. p. 229.

Cook, in his work on Corporations (section 878), states the rule as follows:

"A receiver is not personally liable on debts, contracts, and liabilities incurred by him as receiver. A few cases hold to the contrary, but the settled rule is that a receiver, being only an agent of the court, is no more liable than the court itself."

It is the settled law in this state that a receiver who enters into a contract as such, by the direction or authority of a court having jurisdiction to confer such authority or make such direction, is not personally liable upon the contract so entered into. In Cardot v. Barney, 63 N. Y. 281, the headnote is as follows:

"An assignee or receiver in bankruptcy of an insolvent railroad corporation, who, as such assignee, is running and operating its road, in the absence of evidence that he assumed to act other than as assignee, or that he held himself out as a carrier of passengers other than as an officer of the court, is not liable in an action for negligence causing the death of a passenger, where no personal neglect is imputed to him either in the selection of agents or in the performance of any duty, but where the negligence charged was that of a subordinate whom he necessarily and properly employed in compliance with the order of the court."

It is equally well settled that if a receiver, although authorized by the court to contract as such, assumes to contract in his individual capacity, although for the benefit of his trust, or if he assumes to contract as receiver without authority so to do, he will be held personally liable. The cases cited by respondent's counsel in no way conflict with these propositions. In Ryan v. Rand, 20 Abb. N. C. 313, the plaintiff, who was a stenographer, and had been employed by the attorney for a receiver, brought suit against the receiver personally to recover for services rendered. The receiver was held personally liable, because "the receiver, as a rule, cannot involve the estate in expense without the sanction of the court," and because "there was no authority from the court making the plaintiff's demand a charge upon the estate, and the defendant has no power to make it a charge thereon except by payment, then charging it in his accounts, and having their sanction in the usual way." Sayles v. Jourdan (Sup.) 2 N. Y. Supp. 827, affirmed in 121 N. Y. 685, 24 N. E. 1098, was an action to recover for merchandise furnished to a hotel which the defendant, who was receiver of a railroad company, assumed to run in connection with the railroad. The defendant was held personally liable because "there was no evidence that the defendant was directed by the court to run the

hotel." In Rogers v. Wendell, 54 Hun, 540, 7 N. Y. Supp. 781, and 8 N. Y. Supp. 515, the receiver of the Carthage Company, as such, authorized one Embury to take possession of the property, and to employ such help as was necessary. Embury employed the plaintiff. The receiver was held personally liable, because there was no order of the court directing the receiver to employ the plaintiff or other person, or to incur any expenses in connection with the trust property. In that case it is said by Martin, J. (page 546, 54 Hun, and page 783, 7 N. Y. Supp.):

"A receiver cannot of his own motion contract debts chargeable upon the fund in litigation. While a court may allow expenses incurred by a receiver for the preservation of the property, it is nevertheless the order of the court, and not the act of the receiver, which creates the charge, and upon which its validity depends."

These cases, and many others to which attention has been directed, but restate the rule that where a receiver assumes to contract as such, but without authority to do so, he is personally liable. Such want of authority may arise because of the omission from the order or decree of the court of language suitable to confer the same, or because the court was without jurisdiction to confer such authority. We think the case of Kain v. Smith, 80 N. Y. 458, is within this principle, and is distinguishable from the case at bar. In that case the defendant had been appointed receiver of the Vermont Central Railroad by the court of chancery of the state of Vermont. By the decree of such court he was authorized, in his discretion, to lease and operate the Ogdensburg & Lake Champlain Railroad, which was wholly within the state of New York. The defendant made the lease and assumed to operate such railroad as receiver. An accident occurred, in which an employé upon the leased line was injured, and an action was brought against the defendant personally to recover damages for the injury. The defendant was held personally liable. Concededly, the Vermont court had no jurisdiction over the Ogdensburg & Lake Champlain Railroad, or of its property, rights, or franchises. It had no power to control its operation or management, and it could not clothe its agent with such power or authority. It could not make him an official, or invest him with any official function, in the operation of the leased railroad, cognizable by the courts of this state. The power of the Vermont court was exhausted when it gave its receiver permission to lease, and such permission could only become useful upon the accounting of the receiver in the court which appointed him, and as a protection to him. Otherwise, a receiver, as such, appointed by a court of a sister state, may operate indefinitely a railroad wholly within this state, and incorporated under its laws. If such receiver, as such, may employ one employé, he may employ all the employés necessary for the operation of the road, procure all materials required, make contracts for the carrying of passengers and freight, and, in short, operate, control, and manage the entire railroad and its property, and with no liability except such as may be approved by the courts of the sister state. The proposition is absurd. The appointment of the defendant in

that case as receiver of the Vermont Central Railroad by the court of chancery of Vermont, and the permission given to him by that court to lease the Ogdensburg & Lake Champlain Railroad, in no way changed his character as an individual to that of an official; and all acts done by him in respect to the operation of the New York railroad were individual acts, for which he was personally liable. In the opinion the court uses the following language, which clearly indicates the distinction between that case and the case at bar:

"He [the defendant] was not in possession of the Ogdensburg & Lake Champlain Railroad as an officer of any court, or by its authority. The court itself never had possession of or control over it. He went into possession with his associates by virtue of a contract. He was permitted, not directed, by the court to make it, and this permission will serve him upon his accounting for his management of the Vermont Central road. So far as the Ogdensburg & Lake Champlain Railroad is concerned, the court will not trouble itself; for, if the court authorized the contract, it will see that by its terms the receipts from that road are to be taken by this defendant and others, not as receivers or officers of the court, but as contracting parties; for running or operating a road, and to be placed, not in the custody of the court, nor to be distributed by its directions, but 'that all the gross receipts of and from the business and traffic of or upon the Ogdensburg and Lake Champlain Railroad shall belong to the parties of the second part, and be collected by the managers aforesaid, and disposed of as the parties of the second part shall direct.' They are styled 'managers,' but they are mere associates, combining together to promote a common interest, and in respect to the matters in question subject to the same degree of liability as they would be if they had been associated as co-partners, and had contracted as such to do the things they have undertaken. If the defendant had confined his action to the road over which he was appointed receiver, it may be conceded that the rule applied in Cardot v. Barney, supra, would serve as a defense. Outside of that state he stands as an individual liable for his own negligence, whether he acts personally or through agents, alone or in company with others. He cannot be shielded by a description of his office, or a declaration that he is acting in an official character. The court from which he derived it had no jurisdiction over the subject of the contract, or power to enter a decree to be enforced outside of the state by whose laws it was created, and whose laws alone could make these decrees effective. The defendant could do no act virtute officii in this state, and, although called 'manager' or 'receiver,' he was as to this plaintiff merely an operator of the railroad."

If the defendant in the case at bar had assumed, as receiver, to lease and operate the factory of the plaintiff, and had purchased supplies for its operation from other parties, for which recovery was sought, the case would be analogous to the case of Kain v. Smith, supra. In such case the defendant would clearly be liable, because he would not have authority, and could not be clothed with authority by a foreign court, to carry on such business; and, as before said, whenever a receiver assumes to contract without authority he becomes personally liable.

As we have seen, the defendant was directed by the United States circuit court for the district of Massachusetts to continue the business of the corporation of which he was appointed receiver, and that to do so it was necessary, or at least proper, for him to purchase certain parts of bicycles. In making such purchases, was the defendant confined to the state of Massachusetts, or, if he purchased from dealers outside of the state, was it at the risk or cer-

tainty of being personally liable? Admittedly, if the defendant purchased from manufacturers within the state of Massachusetts, and disclosed his authority and the capacity in which he assumed to act, no personal liability would attach. Does a different rule apply because the vendor or his factory, or both, were within a sister state? If a receiver of a manufacturing corporation, appointed by the courts of this state, and authorized to continue and carry on the business of such corporation, and to purchase supplies and materials for that purpose, enters into a contract as receiver with a resident of this state for furnishing such supplies, and discloses the capacity in which he assumes to act, he will incur no personal liability. In such case the vendor would have a cause of action against him as receiver only. If, perchance, the vendor in such case is a resident of, and has his wares located in, a sister state, does he thereby acquire greater rights, and become entitled, at his option, to maintain an action either against the receiver as such, or against him personally? We think there is no such distinction; that the rule may be stated to be: Where a receiver of a corporation is duly appointed by a court of a sister state, and given authority to continue the business of such corporation, and to make purchases for that purpose, such receiver may make such purchases in the state in which he is appointed, or in any other state, without being personally liable therefor, provided only that he discloses the character in which he assumes to act, and the source of such authority. It follows that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment reversed, and new trial granted, with costs to the appellant to abide the event. All concur, except SMITH, J., not voting.