JAMES ROGERS and another, Respondents, *v.* WILLIAM A. WHEELER and others, as Trustees for the holders of the Second Mortgage Bonds of the Northern Railroad Company, Appellants.

Trustees of a railroad mortgage given to secure the bonds of the company, who proceed to foreclose the mortgage for the benefit of the bondholders, and who, being directed in the decree of foreclosure to bid off the road at the foreclosure sale at a certain sum, if no equal bid is made by others, do accordingly make the bid, receive a deed from the referee, and operate such railroad for the benefit of their *cestuis que trust*, must, as to the public, be regarded as operating the road as owners, and render themselves liable as common carriers of all goods transported over the road under their management.

They are in no sense receivers, or officers of the court, entitled to the immunities from the ordinary liabilities of persons conducting such business, if any, belonging to such officers.

(Argued January 31st; decided February 14th, 1871.)

APPEAL from a judgment of the General Term of the Supreme Court, in the third judicial department, affirming an order of the Special Term sustaining a demurrer by the plaintiffs to the fifth and sixth answers of the defendants.

The complaint was for the recovery of a large quantity of grain belonging to plaintiffs, received for transportation over the Northern railroad, which was burned in the Ogdensburgh depot, and for which the complaint alleged the defendants were liable as common carriers.

The following are the fifth and sixth answers of the defendants, which were demurred to by the plaintiffs:

"5th. And these defendants further answering the complaint say, that the Northern Railroad Company, which constructed and owned the railroad and appurtenances, including the

elevator or grain warehouse referred to in the complaint, became insolvent in, or prior to, 1856. Before that time certain mortgages were duly executed upon all the property, real and personal, of said company, and in an action to foreclose two of the said mortgages, which action was duly brought, a decree was duly made and rendered, whereof a copy is hereunto annexed marked " Schedule A." The trustees for the second mortgage bondholders bid in and purchased the property, in trust, by direction of the court, pursuant to said decree, and took possession and charge of, and properly managed said road, pursuant to the said decree, under the direction of the court, and so continued to manage the road until August 1st, 1865, when the defendants, by the direction of this court, transferred the said road and all its appurtenances to the Ogdensburgh and Lake Champlain Railroad Company. And these defendants say, that in regard to all the matters referred to in the complaint, they and each of them acted with due and proper care and diligence, and with sound discretion as the receiving officers of the court of equity. And they insist and submit that they ought not to be held personally responsible or liable as common carriers, as though they were pursuing a business of that nature for personal profit, whereas they were only in the charge of the property temporarily as appointees by the court, until the necessary legislation and judicial action could be had and obtained to enable the owners of the property to be ascertained and placed in possession."

" 6th. The defendants, further answering, say, that in pursuance of the act of the legislature of the State of New York, passed May 8th, 1864, entitled " An act to revise and amend an act entitled an act to authorize the formation of a corporation in place of the Northern Railroad Company dissolved, and to empower said corporation to execute a mortgage upon its property," passed March 31st, 1857, the Ogdensburgh and Lake Champlain Railroad Company became incorporated; and such proceedings were duly had, that the Supreme Court of this State, in General Term, duly made and caused to be

entered, published and recorded a decree, whereof a copy is hereunto annexed, marked "Schedule B." And in pursuance of the said decree and of the order of the court therein contained, the defendants executed and delivered to the said Ogdensburgh and Lake Champlain Railroad Company a conveyance, whereof a copy is hereunto annexed, marked "Schedule C." Whereupon the defendants claim and insist, that no action in the premises to charge them with a personal liability ought to be allowed or can be maintained."

The decree of foreclosure referred to in these answers, besides the usual provisions in such decrees, contained the following:

"And it is further ordered, adjudged and decreed, that if no other person or persons shall bid upon the sale of said mortgaged premises and property a sum equal to the amount due upon the said mortgages for principal and interest, and the costs and expenses of this action over and above all prior mortgages thereon, that it shall be lawful for the plaintiffs, or one or more of them, in the name of the whole, and they are hereby authorized at such sale, to bid in and become the purchasers of the mortgaged property, and every part thereof, in trust, to sell the same for the benefit of the bondholders, at such sum as in their discretion they may deem most beneficial for the said bond-holders, and they are hereby directed to bid therefor not less than $2,000,000. And if said plaintiffs shall bid in such mortgaged property, as herein authorized and provided for, the said referee shall execute to them the like deeds and conveyances as are hereinbefore directed to be executed to any other purchaser or purchasers, said plaintiffs first paying all fees, costs and expenses hereinbefore particularly specified."

"And it is further ordered, adjudged and decreed, that the said plaintiffs, or a major part of them, in their discretion, may sell such portions of the property as may not be necessary or wanted for the use of the railroad, and they are hereby authorized to execute all necessary and proper deeds and conveyances upon such sale, or they may lease the same for a

term of years, or from year to year, for the benefit of the bondholders, and may, upon the organization of a new railroad corporation under the provisions of the general law on that subject, or otherwise, transfer and assign the property necessary for the purposes of the railroad to the new corporation, and receive in payment, stock to the estimated value of said property, deducting the amount of said prior mortgage to said Savage, Dixwell and Seymour, and may transfer such stock to the bondholders in proportion to the amount of bonds held by them respectively. Provided, however, that such corporation upon such transfer, shall first indemnify and save harmless the said plaintiffs, or their successors, or the successor of either one of them, in the trust hereby created, against any and all legal and just liabilities, then outstanding against them, on account of any act or engagement in the management of the trust property, and shall also pay the just and proper charges and expenses of the plaintiffs, or their agents or successors, or the successor of either one of them, in the management of the trust property."

"And it is further ordered, adjudged and decreed, that if, upon the distribution of the stock as hereinbefore mentioned, any bondholder shall prefer to receive money instead of stock, the trustees may sell his or her portion of the stock, and pay him or her the proceeds thereof in money."

"And it is further ordered, adjudged and decreed, that until the sale of the said mortgaged property by the aforesaid referee, or if the trustees shall become the purchasers thereof in trust to sell the same for the benefit of the bondholders as aforesaid, then until they shall sell the general railroad property for cash, or by transferring the same to such new corporation, the said trustees, or a major part of them, may continue to operate the said railroad, and receive the rents, profits and income thereof, and appoint all necessary agents and subordinates for the complete operation of said road; and they may purchase the necessary supplies, fuel, iron, ties, etc., and keep the road, rolling stock, fixtures and appurtenances in good and proper repair, preventing all waste, injury, and

destruction to the same, or either of them, or any part thereof."

*William M. Evarts,* for the appellants.

*Samuel Hand,* for the respondents.

By the Court—PECKHAM, J. The defendants were trustees for the second mortgage bondholders of the Northern Railroad Company, and the bonds not being paid they foreclosed the same by suit in the Supreme Court, and by permission of the court, as declared in the decree, purchased in the property mortgaged and proceeded to operate the road, receiving the income and paying the expenses, etc., thereof. They held subject to the rights of the first bondholders. While so engaged they became liable to the plaintiffs, as they insist, for the loss of grain which the defendants undertook, as is alleged, to transport over said road as common carriers. This suit was brought to recover for such loss.

In the fifth and sixth answers by the defendants they set up the facts before stated, and aver that in regard to all the matters complained of, they acted with due and proper care, and with sound discretion, as receiving officers of the court of equity. They insist that they ought not to be held personally liable in the premises, as though they were " pursuing a business of that nature for personal profit," whereas they were only in charge of the property " temporarily, as appointees by the court, until the necessary legislation and judicial action could be had to enable the owners of the property to be ascertained and placed in possession."

To these answers the plaintiffs demurred.

The defendants insist that they stand in the relation of receivers of a court of equity, and that they are not liable to be prosecuted in a court of law for any liability incurred as receivers.

Without passing upon the question of the liability of receivers under such circumstances, it seems enough to say that the defendants occupy no such position.

Prior to their having possession of this road they held the second mortgage bonds thereon as trustees for the owners. As such trustees, in the place and for the benefit of the owners, they filed their bill to foreclose and did foreclose. They had a provision inserted in the decree allowing them, as such trustees, to become the purchasers at the sale in case others did not; and if others did not bid sufficient, they were required to bid a certain sum, regarded as enough to cover the amount due with the costs. If they became the purchasers, the referee was to execute to them like deeds as directed to any other purchaser. In a certain event they were to transfer the property to another corporation to be formed; but they were to be entirely indemnified by that corporation against all legal and just liabilities then outstanding against them on account of any act or engagement in the management of the trust property." They retained a lien upon the trust property for the like purpose.

Thus these defendants were carrying out their original trust, assumed at the instance of the second mortgage bond owners. If the execution of that trust involved great responsibilities, these defendants should have been careful how they undertook its discharge, or they should have taken ample indemnity. The decree shows that they were careful to be fully indemnified, so far as the property would do it.

They were in fact, as to these second mortgage bonds, and as to this property so purchased by them, occupying the legal position of the bondholders themselves, and, as to the public, must be held to operate the road as owners. They were in no sense receivers or officers of the court. They were simply trustees, carrying out and executing the trusts and duties they had voluntarily assumed.

They have assumed to operate this road. They have made contracts with the public in the course of that business, and I can perceive no principle or policy that will shield them from liability, if they fail to fulfill the legal contracts they have thus made.

The cases cited by the defendant's counsel seem to me to

have no application. They refer, generally, to attempted interference by third persons, in courts of law, with receivers or sequestrators as to property in their possession as such officers. In such cases suits at law are not allowed against the officers without permission of the court of equity. (*Peale* v. *Phipps*, 14 How. U. S. R., 368 ; *Wiswall* v. *Sampson*, id., 64 ; *Watkins* v. *Holman*, 16 Peters, 25 ; *Vaughn* v. *Northrup*, 15 Peters, 1 ; *Angel* v. *Smith*, 9 Ves., Jr., 355 ; *Parker* v. *Browning*, 8 Paige, 390.)

Here the defendants operated this road precisely as owners, so far as relates to the public, at least so far as the case shows. They employed and discharged the operatives, and entirely managed the road. Under such circumstances they are held liable, though they are trustees merely. (*Ballou* v. *Farnum*, 9 Allen, 47 ; *Sprague* v. *Smith*, 29 Ver't, 421.)

Some one, certainly, under these facts, ought to be responsible to the public. Very large contracts for transportation are made, heavy responsibilities as to freight and passengers incurred ; the defendants alone conduct the business and receive the fruits thereof. Who shall discharge the liabilities ? The defendants have voluntarily assumed this trust, and I think they must be liable for the contracts they have made. What they are, will be proved at the trial.

The equities are already adjusted, as well as they can be, for the defendants in the case, by the decree, and by the assignment of this property to the new corporation, retaining a lien to satisfy all demands against these defendants by reason of their operating the road.

The order should be affirmed, with costs.

All the judges concurring, order affirmed.

---

During the Session, after the Christmas recess, commencing on the 18th January, 1871, and closing the first of March, ANDREWS, J., was not upon the bench.