UNION TRUST COMPANY v. WM. A. KENDALL.

1. CORPORATION; *Character Determined from its Business; When a Trust Company will be Deemed a Railroad Corporation.* A corporation which has the possession, control, and management, and is engaged in the business of running and operating a railroad in this state, is a "railway corporation," within chapter 94 of the laws of 1874, although it is so engaged in the execution and discharge of a trust for the benefit of the bond and stockholders of the corporation which built and owned the road, and is not itself the absolute owner thereof.

2. DEMAND; *Damages for Stock Killed.* A demand under the act of 1874, is sufficient if made upon one who is the "stock and claim adjuster, and authorized to settle for stock killed."

*Error from Neosho District Court.*

ALL necessary facts and questions are fully presented in the subjoined opinion. The district court gave judgment in favor of *Kendall*, at the July Term 1877, and the *Trust Company*, defendant, brings the case here on error.

*T. C. Sears,* and *D. Kelso,* for plaintiff in error.
*Hutchings & Denison,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action under the laws of 1874, for the killing of a cow. There are probably two substantial questions in the case: one, whether the plaintiff in error can be made liable at all under the provisions of said law, and the other, as to the sufficiency of the demand. Of these in their order. The first appears upon the face of the bill of particulars. The action was commenced in a justice's court. The bill of particulars was entitled, as to the parties, "William A. Kendall, plaintiff, vs. The Union Trust Company of New York, Trustee of The Missouri, Kansas & Texas Railway, defendant." And the body thereof is as follows:

"The said plaintiff, William A. Kendall, complains of the

<div style="margin-left:2em">Statement of the case.</div>

said defendant, for that the said defendant before and at the time of the committing of the grievances hereinafter mentioned, to-wit, on or about the 6th of August 1876, was a corporation duly organized under the laws of the state of New York, and was engaged in running and operating a certain railroad, leading from Sedalia, Missouri, to Parsons, Kansas, and of certain cars and locomotives running thereon; that said railroad was not inclosed with a good and lawful fence to prevent animals from being on said road. And said plaintiff further saith, that he was then, to-wit, on or about the 6th of August 1876, the owner of a certain milch cow of the value of thirty dollars; that said cow, without the fault of said plaintiff, strayed in and upon the track and ground occupied by the railroad of said defendant. Said plaintiff further saith, that the said defendant, by its agents and servants, not regarding its duty in this respect, so ran and managed the said locomotive and cars that the same ran against and over said cow of said plaintiff, and killed and destroyed the same, to the damage of said plaintiff $30. The said plaintiff further says, that after the killing of said cow by the defendant as aforesaid, he, plaintiff, demanded of the agent of said defendant the value of said cow, which said demand was made more than thirty days prior to the commencement of this action; but plaintiff says said defendant then and ever since has failed, neglected, and refused to pay to said plaintiff the said sum of thirty dollars, or any part thereof. Wherefore said plaintiff demands judgment."

The statute provides, that "every railway company or corporation in this state, and every assignee and lessee of such company or corporation, shall be liable," etc. And the contention of counsel is, that the Union Trust Company is not alleged to be a "railway company or corporation," or the "assignee or lessee" of one, but on the contrary is described as "trustee" of a railway company; that the terms "assignee," and "trustee," are not synonymous, but have each a peculiar and distinctive meaning in the law; that while an assignee may be in a certain sense a trustee in view of the character of his duties, yet a trustee is often in no proper sense of the term an assignee, and that the statute, being in derogation of common right, and highly penal, must be strictly construed, and is not to be applied to cases not clearly within its provisions.

It may be remarked that the testimony sustains the allegations of the bill of particulars, and shows that the Union Trust Company was engaged in running and operating the railroad, and, by certain agreements, and certain orders of the United States circuit court, that the road was turned over to it, in pursuance of an arrangement between the M. K. & T. Railway Co. and its bondholders, to be managed by it as trustee for the various parties interested. The act of incorporation of said Trust Company was not offered in evidence; and we can only infer the character of the incorporation from its name, and the business in which it is shown to be engaged. And where a corporation is found to be engaged in a certain kind of business, it will be presumed, as against the corporation, in the absence of definite and positive proof to the contrary, that the carrying on of that business is one of the powers with which it is endowed. If a corporation is shown to be engaged in the business of manufacturing, it is proper to call it a manufacturing corporation. If it is operating a railroad, is it not a railway corporation? The name of a corporation is not conclusive as to its character. The best evidence is the charter, which defines its powers. And in the absence of that, the next best evidence, as against it at least, is the business in which it actually engages, the powers it actually exercises. But it may be said, that its name indicates that it is a corporation organized for the sole purpose of assuming and performing trusts; that the agreements and orders show that its acceptance of the management and control of this road is but the carrying out of a trust, and powers incidental to its discharge. This doubtless is a fair deduction from the agreements and orders. But is not a trust corporation, endowed with power in the discharge of a trust to assume the control and management of a railroad, to be deemed, while so engaged in operating and running the road, a railway corporation *pro hac vice*, within the meaning of the act? Is the character of the title by which the property is held, the potent question? or is it not rather the fact, that the corpora-

1. Character of corporation, determined by its business.

tion is, or is not, engaged in the business? Is not one who, although it be in the execution of a trust, engages in the business of buying and selling groceries, properly styled a grocery merchant? Could he evade the payment of any license exacted from such merchants, on the plea that he was only a trustee? Here the trust involves no closing out of the business. Everything, so far as the actual operation of the road is concerned, continues as before. The only change is, that the controlling management is passed from one corporation to another, and the latter is to make certain disposition of the earnings. And if the latter has power to engage in the business of running a railroad, (and that it has that power must, as against it, be presumed in the absence of other testimony from the fact that it assumes and exercises the power,) then, with the exercise of that power it assumes all the responsibilities which the statutes of the state impose upon all corporations engaged in the business of running and operating railroads. In the case of *Clement v. Canfield*, 28 Vt. 802, a lessee was held to be an agent, within the meaning of an act making corporations and their agents liable for damages occasioned by want of fences and cattle-guards. See also, *Tracey v. Railroad Co.*, 38 N. Y. 433; *Rogers v. Wheeler*, 43 N. Y. 598; *Webb v. P. & K. Rld. Co.*, 57 Me. 117; *Mich. Central Rld. Co. v. Kanouse*, 39 Ill. 272. We think therefore the plaintiff in error was properly held to be within the terms of the act.

The demand was made upon one who testified that he was the "stock and claim adjuster, and authorized to settle for

2. Demand, for stock killed. stock killed," and, taking all the testimony together, appears to have been made for a specific sum, and more than thirty days before suit. It appears also that the demand was made while the adjuster was trying to settle this claim. Indeed, he testifies that his proposition was accepted, and a voucher drawn for the amount. Was this a sufficient demand? Counsel claim that the demand must be made upon a ticket or station-agent, under section 3 of the act. We had occasion to consider that question in the

case of the *Central Branch Rld. Co. v. Ingram*, recently decided, (ante, p. 66,) in which we held that said section 3 was not mandatory, but permissive, and that a demand upon the general manager was sufficient. Following the opinion announced in that case, a demand upon one authorized to settle the claim, and engaged in an attempt to settle it, would be sufficient. He in that respect fully represents the company, as fully as the general manager does in all respects. The demand therefore was sufficient.

Certain minor matters are noticed by counsel, but we see no substantial error in the case, and the judgment will be affirmed.

All the Justices concurring.