THOMAS KAIN, Appellant, *v.* JOHN GREGORY SMITH,. Impleaded, etc., Respondent.

Where two or more persons or corporations are operating a railroad, their· liability to an employee for an injury resulting from defective machinery furnished by them for use in the course of his employment, is several as. well as joint, and an action is maintainable against one of them.

Every railroad operator owes to his employees a duty to furnish machinery adequate and proper for the use to which it is to be applied, and to· maintain it in like condition. For every injury happening by reason of neglect to perform this duty, he is liable as for a tort ; and this whether· the act or omission causing it was due to his personal neglect, or the neglect of an agent employed by him, and whether there were one or· more parties concerned as operators or employees.

While the receiver of a railroad may be protected from an action at law,. in respect to the property in the possession of the court, or in his hands. as its receiver, or from the consequences of an accident occurring in its management, as to other property the management of which he has. voluntarily assumed, and over which the court has no control,. he is. responsible individually for its careful and proper management.

Defendant S., and others, who had been appointed receivers of the V. C. R. R. Co., a Vermont corporation, by the Court of Chancery of that. State, with the consent and authority of said court, together with the V. C. R. R. Co., leased of the O. & L. C. R. R. Co., a New York corporation, its road, rolling-stock, etc., for a term of years ; the lessees. covenanting among other things to keep the demised property in good. repair, and to " assume all obligations " of the lessor, " either by statute or at common-law, as common carriers, warehousemen or otherwise."· Under this lease the lessors took possession of and operated said road. Plaintiff was in the employ of said lessees upon the road, and while engaged in loading a car was injured by the fall of a jigger belonging to and furnished by them for such use, but which was insufficient for that purpose ;. S. was not present at the time, and no personal negligence on his part was claimed. *Held*, that an action to recover damages was maintainable: against S. alone ; that the fact of his being a receiver did not affect his: liability, as he was not in possession of the road so leased as an officer· of any court or by its authority, but by virtue of a contract simply permitted. by the court ; that, outside of the State of Vermont, the court had. no jurisdiction, and S. could do no act *virtute officii* in this State ; his. liability was that of an individual, and he could not be shielded by a. description of his office, or a declaration that he was acting in an official character.

*Cardot* v. *Barney* (63 N. Y., 281), distinguished.
*Kain* v. *Smith* (11 Hun, 552), reversed.

(Argued February 26, 1880 ; decided April 6, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of defendant Smith, entered upon a non-suit granted at the circuit. (Reported below, 11 Hun, 552.)

This action was brought to recover damages for injuries alleged to have been caused by defendant's negligence.

The complaint in substance alleged that John Gregory Smith, Benjamin P. Chaney and Joseph Clarke, were managing and operating the Ogdensburg and Lake Champlain Railroad, as carriers of passengers and freight, and as such, had in use, depot and station grounds, tracks, cars and other appurtenances to said business at Ogdensburg. That on the 18th of May, 1872, the plaintiff was in their employ at the depot grounds in Ogdensburg, and was engaged under the direction of one William Forrest, a foreman employed by them in loading a car with iron car wheels, by means of a jigger belonging to and furnished for such use by them. That it " was carelessly and negligently constructed by them, and was not proper or sufficient for the purposes for which it was so furnished." That in consequence thereof while he was so engaged the jigger fell upon and injured him, without fault on his part. All the persons above named were styled defendants in the title of the summons, but it was served on Smith only, and he appeared and answered. Upon the trial at circuit the plaintiff's counsel read a stipulation signed by the attorneys for the respective parties by which it was admitted : that the said railroad was the property of the " Ogdensburg and Lake Champlain Railroad Company," a corporation duly created and organized under the laws of the State of New York. That on and since the 24th of February, 1870, " The Vermont and Canada Railroad Company," was a corporation organized under the laws of the State of Vermont, and as such owned and operated a railroad from St. Albans, Vermont, to Lake Champlain, then connecting with the Ogdensburg and Lake Champlain Railroad. That prior to the 24th of February, 1870, the Vermont Central Railroad Company,

was a corporation created under the laws of Vermont, and as such operated a railroad from White River Junction to St. Albans, where it connected with the Vermont and Canada Railroad. That prior to the 24th February, 1870, by proceedings duly had in the Court of Chancery of the State of Vermont, the persons above named and one Lawrence Brainerd (who died before the commencement of this action) were appointed receivers and managers of said Vermont Central Railroad Company, to hold and operate the said Vermont Central Railroad as officers of said court, and not otherwise. *That on the 24th day of February, 1870, said Vermont and Canada Railroad Company, and said receivers and managers of the Vermont Central Railroad Company,* being thereunto *duly authorized* by the laws of the State of Vermont, and by the orders and decrees of said Court of Chancery, entered into a contract with said Ogdensburg and Lake Champlain Railroad Company, of which the preamble and important parts are as follows :

" Articles of agreement between the Ogdensburg and Lake Champlain Railroad Company, a corporation organized under the laws of the State of New York, party of the first part, and the Vermont and Canada Railroad, a corporation organized under the laws of the State of Vermont, and the managers and trustees of the Vermont Central Railroad Company, who have the possession and management of the Vermont Central Railroad by virtue of decrees of courts, and the laws of the State of Vermont, parties of the second part.

" *Whereas,* The aforementioned railroads form one connecting line of railroad track from the foot of ship navigation of the Great Lakes, at Ogdensburg, to White River Junction and Windsor, Vermont, and the traffic and business of each of the railroads is so intimately connected that it can be carried on, and conducted to the greatest advantage of all concerned *by having all the said roads under one management* with proper arrangement for an equitable division of the earnings, and

" *Whereas*, A consolidation of said railroads may ultimately be found desirable for the benefit of the public and the stockholders of all the roads, as provided for by the act of the Legislature of the State of New York, passed May 29, 1869, entitled ' an act authorizing the consolidation of certain railroad companies ; ' *but that a temporary arrangement* (*within the terms of said act*) is most desirable for all interests, until it can be clearly seen whether full consolidation to the extent authorized by said act will be advantageous to all parties.

" *Now, therefore*, It is covenanted between said parties jointly and severally, as follows :

" Article First. That the parties of the second part, either by themselves or in connection with other railroad corporations, by virtue of business contracts, regulating the business from said Ogdensburg and Lake Champlain Railroad Company, *shall have the possession and control and use of the Ogdensburg and Lake Champlain Railroad*, with all its branches and all its locomotives, cars, engines, and all other rolling-stock, and all its tracks, elevators, switches, and all its station-houses, store-houses, offices, and all its other buildings of every description, and all the lands and real estate of the party of the first part, with all its rights of way and passage, excepting, however, and expressly reserving certain wood lands and village lots.

" Article Second. All the gross receipts of and from the business and traffic of or upon the Ogdensburg and Lake Champlain Railroad after the 1st day of March, A. D., 1870, *shall belong to the parties of the second part, and be collected by the managers aforesaid, and disposed of as the said parties of the second part shall direct.*

" Article Third. The Ogdensburg and Lake Champlain Railroad Company hereby sells to the party of the second part all the fuel, lumber, timber, new ties, oil and waste stationery, and all other things of a like character furnished for use upon its road, and also assigns to the party of the second part all existing contracts they have for any such property ;

and the parties of the second part agree jointly and severally to pay for the same at cost. And the parties of the second part assume and agree to fulfill all existing agreements of the party of the first part, for purchase of supplies and for transportation.

"Article Fourth. The parties of the second part jointly and severally covenant and agree to and with the parties of the first part, its successors and assigns, to keep up and maintain in good order and condition by repairs and renewals, as the same may be needed, all the present equipment of the party of the first part, and to add such new cars and engines as may be necessary to provide for waste and depreciation, as the same may from time to time occur; and that all the railroad tracks, turnouts, docks, bridges. buildings, shops, tools, machinery, locomotives, cars, rolling-stock, equipment, and everything herein named or not named, which is taken, possessed or controlled by the parties of the second part or any of them, or any of their officers, successors or assigns, by virtue of this contract, shall be kept in repair restored and returned to the party of the first part, its successors or assigns, in as good and serviceable condition as at the date when this agreement is to go into operation."

By article five, the party of the second part undertake to pay to the party of the first part $384,620, in each year for three years, a still larger sum for each of three years thereafter, and a still larger sum each year thereafter, so long as the contract remains in force.

By article six, the party of the second part is to pay all taxes assessed, or to be assessed upon the property transferred to them, and they agree that they will " assume all the obligations of the parties of the first part either by statute, or at common-law, as common carriers, warehousemen or otherwise, and will indemnify and save harmless the party of the first part from all costs, damages or loss by reason of any failure to fulfill said obligations, and by reason of any claim that may be made for any neglect, accident or default happening upon or in connection with, the road of the parties of

*the first part, and save the party of the first part and its successors and assigns, from all loss, damages, costs and expenses, for or by reason of anything to be done or omitted* on its part under its charter and existing laws, from and after the day this contract goes into effect. \* \* \* And the parties of the second part and each of them shall have the right to use the name of the party of the first part in bringing any actions, and in making any defenses."

By other articles provision is made for an inventory and appraisal of the property, and by article eleventh, it is declared, that "In case the party of the first part shall at any time consider that the parties of the second part have in substantial respect failed to fulfill the terms of this contract on their part, the party of the first part may apply to the Supreme Court in the State of New York, upon affidavits, and upon not less than thirty days' notice to the parties of the second part, to be served personally upon one of their managers, *or left at their principal office in Vermont, properly directed to such manager*, for an order or injunction to restore the first party to the possession and control of all the property embraced in and under this contract ; and if upon such application the court shall decide in their favor, they shall be immediately restored to such possession, unless the parties of the second part shall, under the direction of said court, give to the first party full and ample security to pay any judgment which shall be obtained in any regular action which said first party may obtain for such failure to fulfill the terms of the contract aforesaid, together with any and all costs and expenses," etc. But if the court decide otherwise then the party of the first part shall pay costs and damages.

By article 12, " Each of the parties covenants to and with each of the others jointly and severally, that they will hereafter and at all times make and execute all such further covenants and agreements as counsel learned in the law may advise necessary to carry into effect the true intent and purpose of this contract ; and should any further legislation be

deemed requisite, will endeavor by all proper means to pro-
cure such legislation to carry this contract into effect, and
see that a more perfect union may be made if it shall be
found desirable for the promotion of their mutual interest;
and, the expense of all such proceedings if done at the
request of the parties of the second part shall be paid by
them."

Provision is made for an increase of capital stock on the
part of the Ogdensburg and Lake Champlain Company, and
for the continuance of the contract for twenty years. It is
executed in the manner following:

" The Ogdensburg and Lake Champlain Railroad Com-
pany, by

        " (Signed)        JOHN C. PRATT,   [SEAL.]
                                    " *President.*

" The Vermont and Canada Railroad Company, by
        " (Signed)        JOHN  PORTER,   [SEAL.]
                                    " *Vice-President.*

        " (Signed)   and SAMUEL ATHERTON,
                                    " *Director.*

" The Trustees and Managers of Vermont Central and
Vermont and Canada Railroads

        " (Signed)   J. GREGORY SMITH.  [SEAL.]
        " (Signed)   B. P. CHENEY.        [SEAL.]"

It also appeared from the stipulation, that from the 1st
day of March, 1870, until the 1st day of July, 1873, the
said railroad in the complaint mentioned, was operated, and
the said depot and station grounds, repair shops and other
buildings, railroad tracks and cars in said complaint men-
tioned, were used and possessed by the parties of the second
part, in said contract named, in the operation of said rail-
road, and in the business of transporting passengers and
freight thereon, under *and in pursuance of the terms of said
contract, and not otherwise.* That the plaintiff and William
Forrest in said complaint mentioned, were in the employ of
the parties of the second part in said contract named, so, as

aforesaid, carrying on said railroad, and not otherwise at the times alleged in the complaint. Upon the pleadings, and this proof, and before the plaintiff's case was closed, the defendant Smith moved for a nonsuit. The case states that from the opening of the counsel for the plaintiff, it appeared that such a case existed, in favor of the plaintiff, as would entitle him to submit it to the jury, if the liability of the defendant Smith to the plaintiff was the same as if Smith were the sole proprietor and operator of the railroad. It was conceded by the plaintiff's counsel that the defendant Smith was not present at the time the plaintiff received his injury, and that no personal negligence of Smith contributed thereto. The plaintiff was thereupon nonsuited by the court upon the sole ground as stated by the judge : "that the gist of the action is the breach of the implied contract, and you can't say that the implied contract is with Smith, but you must sue all." Upon appeal to the General Term from the judgment entered upon this decision, it was held that the reason given by the trial judge was not a good one ; but the nonsuit was maintained, upon the ground that the defendant was not the master of the plaintiff, but was acting in relation to the road in an official character, and under, and by authority of the court.

*Leslie W. Russell,* for appellant. This was an action sounding in tort, and could be brought against one or all of the wrong-doers. (*The Atlantic Mut. Ins. Co.* v. *McLoon,* 48 Barb., 27; *Low* v. *Mumford,* 14 J. R., 426; *Greed* v. *Hartman,* 29 N. Y., 591; *Webster* v. *Hudson River R. R. Co.,* 38 id., 260; *Barrett* v. *Third Ave. R. R. Co.,* 45 id., 628, 631; *Roberts* v. *Johnson,* 58 id., 613, 616; *Chipman* v. *Palmer,* 9 Hun, 517.) The limit of defendant's liability as receiver of the Vermont railroad while in possession of the leased road, upon an accounting with the Vermont court, is not the limit of his liability to third persons dealing with him in the execution of an executory contract by him with reference to property in this State.

(*Morrell* v. *Dickey*, 1 J. Chy., 153; *Doolittle* v. *Lewis*, 7 id., 45; *Parsons* v. *Lyman*, 20 N. Y., 108; *New Jersey Lombard Bank* v. *Thorpe*, 6 Cow., 46; *Runk* v. *St. John*, 29 Barb., 585; *Hoyt* v. *Thompson*, 1 Seld., 341; *Fenton* v. *Lumberman's Bank*, Clarke, 286; *Hunt* v. *Columbian Ins. Co.*, 55 Me., 290; *Graydon* v. *Church*, 7 Mich., 36; *Taylor* v. *Columbian Ins. Co.*, 14 Allen, 353; *Pond* v. *Vermont R. R. Co.*, Oct. 19, 1876, MS.; *Booth* v. *B. and A. R. R. Co.*, 7 Week. Dig., 108.) This action is founded upon negligence or breach of duty which existed as to all the world, and the limitations upon the rule as applicable to the claim of a servant against the master do not apply. (*Coughtry* v. *Globe Wool Co.*, 50 N. Y., 124; *Flike* v. *B. and A. R. R. Co.*, 53 id., 549; *Sprong* v. *B. and A. R. R. Co.*, 58 id., 56; *Laning* v. *N. Y. C. R. R. Co.*, 49 id., 521; *Ross* v. *N. Y. C. and H. R. R. R. Co.*, 5 Hun, 488.) A trustee possesses the legal title to the thing of which he is trustee, and in dealing with it persons deal with him, as the owner of such title. (Story's Equity, § 964.) Such persons are liable for their acts. (*Rogers* v. *Wheeler*, 43 N. Y., 603; *Paige* v. *Smith*, 99 Mass., 395; *Sprague* v. *Smith*, 29 Vt., 421; *Barker* v. *Wheeler*, 49 N. H., 9; *Ballou* v. *Farnham*, 9 Allen, 47; *Lamphear* v. *Buckingham*, 33 Conn., 237; *Blumenthal* v. *Brainerd*, 38 Vt., 402; *Klein* v. *Jewett*, 26 N. J. Eq., 494; *Newell* v. *Smith*, 49 Vt., 255.)

*Edward C. James*, for respondent. The relation of master and servant rests upon contract, and did not exist between the defendant and the plaintiff. (2 Kent [m. p.], 258.) Out of such contract there arises an obligation, on the part of the master, to use ordinary care, not to expose his servant to unreasonable risks and dangers. (*Laning* v. *Rail. Co.*, 49 N. Y., 521, 532; *Ross* v. *Rail. Co.*, 5 Hun, 488, 493, 494; *Farwell* v. *Rail. Co.*, 4 Metc., 49, 56; *Coombs* v. *Cordage Co.*, 102 Mass., 572, 589.) It is only for a breach of this implied contract that a master can be held liable to a servant for an injury which he did not personally inflict. (*Wright*

v. *Rail. Co.*, 25 N. Y., 562; *Warner* v. *Rail. Co.*, 39 id.; 468; *Malone* v. *Hathaway*, 64 id., 5; *Kelly* v. *Norcross*, 121 Mass., 508.) One who contracts with a receiver officially cannot hold him liable on such contract personally. (High on Receivers, §§ 272, 395; *Livingston* v. *Pettigrew*, 7 Lans., 405; *Cardot* v. *Barney*, 63 N. Y., 281; 4 Hun, 373; *Meara's Adm.* v. *Holbrook*, 20 Ohio St., 137; *Potter* v. *Bunnell*, id., 149; *Henderson* v. *Walker*, 55 Ga., 481; High on Receivers, § 398; *Blumenthal* v. *Brainerd*, 38 Vt., 402.) As managing agents, defendants were not the masters of the plaintiff, nor liable to him for any omission or neglect of duty. (*Calvin* v. *Holbrook*, 2 N. Y., 126, 129.)

DANFORTH, J. In view of the facts stated in the complaint, the concession upon the trial, "that such a case existed in favor of the plaintiff, as would entitle him to submit it to the jury, if the liability of the defendant Smith to the plaintiff, was the same as if Smith were the sole proprietor and operator of the railroad," and the ruling of the trial judge thereon, it would seem that the only question presented at the circuit, related to the liability of one out of two or more operators of a railroad for injury to an employee, by reason of defective machinery furnished by them for use, in the course of his employment, and was one of form rather than substance. But the reason assigned by the learned judge, who delivered the prevailing opinion at the General Term in support of the judgment, presents an inquiry whether the defendant's relation to the road subjected him to any liability except in an official or representative capacity. The learned counsel for the respondent now relies upon both grounds to defeat this appeal. As to the first, we concur with the General Term in thinking that it is untenable. The plaintiff's right of action is founded on a duty which every railroad operator owes to his employees, and which requires him to furnish machinery adequate and proper for the use to which it is to be applied, and to maintain it in like condition for their protection and safety. (*Fuller* v. *Jewett, Rec'r, etc.*,

opinion by ANDREWS, J.*)  For every injury happening by
reason of neglect to perform this duty, he is liable as for.a tort,
and this is so whether the act or omission causing it, was due to-
his personal neglect, or the neglect of an agent employed by
him, and whether there are one or more parties concerned as.
operators or employers, can make no difference.  The liability
is several, as well as joint.  (*Creed* v. *Hartman,* 29 N. Y., 591;
.*Roberts* v. *Johnson,* 58 id., 613.)  The concession above cited,
seems to exclude all grounds upon which the ruling of the trial
court can stand, for it implies the existence of the cause of
action stated in the complaint, and of that, negligence is an im-
portant element.  It concedes that the defendant was, with
others, managing and operating the road, and prosecuting
the business of common carriers, in the customary manner,
and for negligence in that character they are liable jointly
and severally according to the general law.  This would be.
so even if they were technically receivers, for unless prohibi-
ted by the court, whose officers they were, a party injured
might proceed at law for damages as in other cases.  See
cases cited, *infra.*

This conclusion would alone require a reversal of the
judgment, but the other question is fairly raised, and will
again present itself if a new trial is had.  It is of greater
novelty, and makes the case one of considerable importance,
for if the respondent's contention is correct, an easy mode is
provided by which a railroad can be run in this State with
no responsibility on the part of those operating it for inju-
ries to persons or property, and no liability from those causes
which, under our laws, "for reasons of public policy and
private justice," are deemed sufficient to give a remedy to
employees for injuries occasioned by defective machinery or
appliances furnished to them in the course of their employ-
ment.  In the absence of express legislative enactment, a
conclusion involving such consequences should not be reached,
unless required in obedience to some well settled principle
of the common-law, or adjudged cases to the authority of

---

* See *ante,* p. 46.

which the court must submit. The learned judge whose opinion is above referred to regarded the question as *primus impressionis*, and "found no authority covering the point here presented," but thought the principles enunciated in *Cardot* v. *Barney* (63 N. Y., 281), sustained the views upon which he was about to place the judgment of the court. In that case it was held that an assignee or receiver in bankruptcy, who, as such, is running and operating the road, of a bankrupt corporation in the absence of evidence that he assumed to act otherwise than as assignee, or that he held himself out as a carrier of passengers, other than as an officer of the court, is not liable in an action for negligence, causing the death of a passenger, where no personal neglect is imputed to him, either in the selection of agents or in the performance of any duty, but where the negligence charged was that of a subordinate, whom he necessarily and properly employed, in compliance with the order of the court.

*First.* Upon what facts does this decision rest ?

A road in possession of the court, operated by its officer, and an accident occurring through the negligence of a subordinate, employed by this officer, by order of the court, and all within its jurisdiction.

*Second.* Upon what principle ? ₀

That such an officer displaces the directors or other body who by its charter are authorized to manage its affairs, and under the direction of the court by which he is appointed, has the sole control of its property and effects, and when authorized so to do, the executive power to use its franchises (*City of Rochester* v. *Bronson,* 41 How. Pr. R., 78), and is responsible for his conduct in all these things to the court appointing him. In such a case also the remedy for injuries resulting from his negligence, or the negligence of those operating a railroad under him, would be by application to the same tribunal (*Noe* v. *Gibson,* 7 Paige, 513; *Parker* v. *Browning,* 8 id., 388; *Metz* v. *Buff., Corry and P. R. R. Co.,* 58 N. Y., 61; *Morse* v. *Brainerd, etc.,* 41 Vt., 551; *Klien* v. *Jewett,* 26 N. J. Eq., 474), which might itself dis-

pose of the matter by administering justice between the parties, or allow the party aggrieved to bring his suit at law for the alleged injury. (Cases above cited.) But this is so when the person charged is acting under color of its authority merely, and to such a case only does the decision relied upon apply. Observe the care with which the facts are eliminated, on which it rests; but as if to prevent any misconception the learned judge confines it to a case where there is " an absence of evidence that the operator assumed to act otherwise than as an assignee, or that he held himself out as a carrier of passengers other than as an officer of the court." (*Murphy* v. *Holbrook et al.*, *Recrs. of the C. P. and I. R. R. Co.*, 20 Ohio St. Rep., 137; *Potter, Recr. of the A. and G. W. R. Co.* v. *Bunnell*, id., 150; *Henderson* v. *Walker, Recr.*, etc., 55 Ga., 481, stand upon the same principle.)

So limited, there is no danger that any injury will go without compensation. Damages for injury to the person, whether passenger or employee, for loss of goods in course of transportation, or otherwise, would be chargeable upon, and payable out of the fund in court, the same as other expenses of administration. (*Klein* v. *Jewett*, 26 N. J. Eq. R., 474; *Morse* v. *Brainerd*, etc., 41 Vt., 551; *Cowdrey* v. *G. H. and H. R. R. Co.*, 3 Otto [93 U. S. Sup. Ct.], 352.) The defendant can find no immunity in the rule thus established. He was not in possession of the Ogdensburg and Lake Champlain Railroad as an officer of any court or by its authority The court itself never had possession of, or control over it. He went into possession with his associates by virtue of a contract. He was permitted, not directed, by the court to make it, and this permission will serve him upon his accounting, for his management of the Vermont Central road. So far as the Ogdensburg and Lake Champlain Railroad is concerned, the court will not trouble itself, for if the court authorized the contract it will see that by its terms the receipts from that road are to be taken by this defendant, and others, *not* as receivers or officers of the court, but as contracting parties, for running or operating a road

and to be placed, not in the custody of the court, nor to be distributed by its directions, but "that all the gross receipts of and from the business and traffic of or upon the Ogdensburg and Lake Champlain Railroad, shall belong to the parties of the second part, and be collected by the managers aforesaid, and disposed of as the parties of the second part shall direct." They are styled managers, but they are mere associates, combining together to promote a common interest, and in respect to the matters in question subject to the same degree of liability as they would be if they had been associated as copartners, and had contracted as such to do the things they have undertaken. If the defendant had confined his action to the road over which he was appointed receiver, it may be conceded that the rule applied in *Cardot* v. *Barney* (*supra*), would serve as a defense. Outside of that State he stands as an individual liable for his own negligence, whether he acts personally, or through agents, alone, or in company with others. He cannot be shielded by a description of his office, or a declaration that he is acting in an official character. The court from which he derived it had no jurisdiction over the subject of the contract, or power to enter a decree to be enforced outside of the State by whose laws it was created, and whose laws alone could make these decrees effective. The defendant could do no act *virtute officii* in this State, and although called manager or receiver he was as to this plaintiff merely an operator of the railroad.

In *Cardot* v. *Barney* (*supra*), the road upon which the injury occurred, was itself in the hands of the court. The defendant was running it by its order, and as above suggested it is upon this fact, the decision rests. ALLEN, J., says : "The defendant had neither a general or a special property in the road or its earnings. The property was in court for management and administration, and the defendant was an officer of the court, obeying its orders, and carrying out its directions." If the accident in question had occurred upon the Vermont Central Railroad, the decision would have

been in point to defeat a recovery, for as is conceded, " the defendants were appointed receivers and managers of the Vermont Central Railroad to hold and operate that road as officers of said court, and not otherwise." But the receivership did not in any way extend to the Ogdensburg and Lake Champlain road. Judge ALLEN says in the case cited " the employment of agents was a necessity, and expressly directed by the court." In the .case before us, as we have seen, the defendant obtained the control of the road by contract, through association formed with other roads, in part for their benefit, and in view of still greater advantages in the future. The permission of the court was given, but to be exercised at his option,. and for the benefit of several parties, but whether to be exercised or not, or to what extent, was a matter over which he could exercise his discretion ; there was no direction by the court.

The maxim of *respondeat superior* ·applies to such a case, as explained and illustrated in *Cardot* v. *Barney*, and as is there stated, " the fact is unimportant that they " (the persons charged) " were trustees, and acted in a representative capacity." The entire argument of Judge ALLEN in that case, as I understand it, lends support to the appellant, and his right of action is sustained by *Rogers* v. *Wheeler* (43 N. Y., 598); *Sprague* v. *Smith* (29 Vt., 421); *Barter* v. *Wheeler* (49 N. H., 9); *Blumenthal* v. *Brainerd* (38 Vt., 409); *Paige* v. *Smith* (99 Mass., 395; 20 Ohio St., 137). The doctrine therefore elaborated by Judge ALLEN in *Cardot* v. *Barney* (*supra*), and the exceptions indicated by the cases above cited, lead to the conclusion that the defendant is liable under the facts before us, to the same extent precisely, as if he were not receiver. He might be protected from an action at law in respect to the property in the possession of the court, or in his hands as its receiver, or from the consequences of an accident occurring in its management, but as to other property, the management of which is voluntarily assumed, over which the court had no control, he stands in his natural person, and responsible for its careful

and proper management to all those whose relations to it, are such that they may suffer from his neglect of duty. A contrary doctrine would leave the injured party remediless. As in this case, if the judgment below is correct, the Ogdensburg and Lake Champlain Railroad Company would not be liable, for neither the defendant nor his empolyees were its servants, and it would not be liable for his nor their acts. (*Ballou* v. *Farnum*, 9 Allen, 47; *O. and M R. R. Co* v. *Davis*, 23 Ind., 553.) It would follow that the defendant first getting permission of the Court of Chancery of Vermont, might obtain by contract, control of all connecting roads in adjoining States, operate, and receive the proceeds, and neither he nor they be liable for the manner in which the business was conducted. Such result may be inevitable when the road itself is in possession of the court, but it could not be tolerated when its possession was acquired by contract. The principles upon which this conclusion rests have been applied to this defendant by the courts of the State in which he was appointed. In *Sprague* v. *Smith* (29 Vt., 421) an action was commenced by a passenger for damages for injuries. The writ issued against Smith, and his associates; as to them it was returned *non est*. He pleaded the general issue. After verdict, and upon appeal, his counsel contended: "That the defendants could not be made personally responsible to the plaintiff; that the remedy should have been sought against the principal, the railroad company." In reply thereto, the court by REDFIELD, Ch. J., said: "The defendants are trustees for the benefit of certain bondholders of the Vermont Central Railroad, and as such, assignees of the company. The first question made in the case is, whether the defendants are personally liable upon the contracts made by the operatives upon the road, or for their negligence or misconduct, while they continue to operate the road, and receive freight and pay for carrying passengers for the benefit of the *cestuis que trust*. It is well settled in practice, and by repeated decisions, that the lessees of railroads are liable, to the same

extent as the lessors would have been, while they continue to operate the road. Indeed there can be no question, we think, that a mere intruder into the franchise of a railway corporation, who should continue to use it for his own benefit, would be liable to passengers, and the owners of freight who employ him, to the same extent precisely as the company itself, while continuing the same business. Any other view of the liability of such intruder would be to allow him to allege his own wrong in his defense. And we can see no reason why the defendants are not liable to the same extent as the company would have been, and upon similar grounds to those upon which lessees, or any others exercising the franchise of the company, for the time, must be ; that is, that they are the ostensible parties, who appear to the public to be exercising the franchise of the company. It would be perplexing in the extreme to require strangers suffering injury through the negligence of operatives under the defendant's control to look beyond the party exercising such control. The party having this independent control is, in general, liable for the acts of those under such control, whether of contract or tort." And so although the judgment was reversed, it was upon another point not involved here. *Blumenthal* v. *Smith* (38 Vt., 402) was assumpsit against this defendant and his associates as common carriers, the defendants put in evidence the orders in chancery, by which they had been appointed receivers, and it was conceded that they were managing the Vermont Central, and Vermont and Canada railroads, as receivers of those roads under the order at the time the goods were lost. Concerning a defense resting upon these facts the court in review say : "The defendants claim that they were operating the Vermont Central, and Vermont and Canada railroads as receivers under the appointment of the Court of Chancery, and that, being the agents and officers of that court under this appointment, they were subject to account only in that court, and were entitled to its protection and judgment in all matters growing out of the performance of their duties as such

receivers, and therefore could not be made liable either as common carriers or warehousemen in this action. A Court of Chancery will protect a person acting under its process or authority, in the execution of a decree or decretal order, against suits at law; and will compel parties to apply to that court for relief. This protection is accorded by that court to its officers only on their own application, and is granted by the chancellor in the exercise of his discretion, and it is to be presumed that it would be granted in any necessary or proper case for such relief. (2 Story's Eq. Jur. [Redfield's ed.], §§ 833, a, 833, b, 891; 2 Daniel's Chy. Pr. [Perkins' 3d Am. ed.], 1433.) But we think that the mere fact, that the defendants were acting as receivers, under the appointment of the Court of Chancery, cannot be recognized as a defense to a suit at law for a breach of any obligation or duty which was fairly and voluntarily assumed by them in matters of business conducted or carried on by them while acting as such receivers. As between a receiver and the parties interested in the trust, the receiver would be responsible for negligence; but he might be liable to other parties in a larger or stricter degree of responsibility. The assumption by the defendants of the peculiar duties and extraordinary responsibilities arising from the relation of common carriers, is not to be considered as necessarily, if at all, incompatible with any duty or responsibility imposed upon them as receivers. The plaintiff's evidence tended to show that the defendants were managing and controlling a long line of railroad, and conducted and held themselves out as common carriers over that line. If in fact they were common carriers over that line of railroad, we think that it is no defense to an action at law for a breach of a duty, or obligation, arising out of business intrusted to them in that relation, that they were running and managing the line of railroad as receivers under an appointment of the Court of Chancery."

In *Newell* v. *This Defendant* (49 Vt., 260), a similar action was brought against them, for goods lost. The same evidence was made of their official character, and counsel in

their behalf said : " We claim that defendants are not personally liable on any contract, express or implied, in performance of their duties as receivers ; and there is no pretense that they had any connection with these goods, except in their capacity as receivers. We do not deny that if plaintiffs have a cause of action, they have a remedy for it, and that is, to apply to the court that has charge of the railroads. If defendants had committed a *tort*, or entered into a *personal* contract as common carriers, they might be liable for a tort committed by them, or a breach of contract. But the case does not show that personally they were common carriers ; nor that they acted in any other way than as *receivers or agents* in the management of the corporation railroads. The property of these railroads is chargeable for their liabilities ; but the mere servants who are operating them are no more liable than the president and superintendent of a railroad company are personally liable on the contracts of the company." But in affirming the judgment against them the court say : " The defendants were receivers in chancery of the property of the railroads employed in part in the transportation of the goods in question. In the operation and management of the roads, they sustained to persons dealing with them, the character of common carriers. They at all times might invoke the aid of the court of chancery in any matter affecting their duty or liability under their trusteeship ; waiving this, they are amenable in the common-law courts to actions for negligence as carriers. We have no occasion or inclination to modify the doctrine before announced by the courts upon this subject." Referring to the cases above cited.

To the same effect are cases decided in the courts of Massachusetts. In *Paige* v. *This Same Defendant* (99 Mass., 395), the same defense was interposed to a claim for loss of property intrusted to them as common carriers, but the court held them liable notwithstanding. Following the decisions which I have above cited, and in the same court (*Nichols* v. *Smith*, 115 Mass., 332), the same defendants

were held liable in an action at law, for damages for loss of a quantity of wool destroyed by fire in a railroad depot under their management, and the principle on which these decisions stand, has been applied to other parties. In *Ballou* v. *Farnum* (9 Allen, 47), it appeared that the plaintiff was injured at a crossing through the negligence of a switchman, upon the Norfolk County railroad. The defendants were its trustees, and they denied that they managed the road in their individual capacity, but a verdict against them was sustained upon grounds applicable to the case before us, viz.: "That the defendants received the earnings of the road, paying the expenses, selecting, contracting with, and discharging the persons employed on the road, and exercising all the powers usually exercised by railroad corporations on their own roads." The same conclusion was reached, and upon the same grounds in *Barter* v. *Wheeler* (49 N. H., 9), where the defendants occupied the same position as trustees, and in *Lamphear* v. *Buckingham* (33 Conn., 237), an action for injury to a passenger. In *Klein* v. *Jewett, Receiver of the Erie Railway* (26 N. J. Eq., 474), application by one injured while a passenger, was made to the court for damages, or for leave to sue at law, and the court say it has power to grant either, adding : "Upon principle it would seem to be clear, that no person can be permitted to exercise the rights and powers of a common carrier, especially when they embrace the franchises granted to a railroad corporation, except subject to the duties and liabilities of common carriers. \* \* \* Both upon principle and authority, I think it must be held, that a receiver, operating a railroad under the order of a court of equity, stands in respect to duty and liability, just where the corporation would, were it operating the road, and the question whether or not the receiver is liable for negligence, must be tested by the same rules that would be applied if the corporation was the actual party defendant before the court."

In the case before us every fact exists upon which these cases stand. The defendant has by voluntary contract

obtained possession of the road, is in receipt of its profits, has displaced the directors in its management, upon his undertaking to act in all things as it was otherwise their duty to do. For any negligence in the performance of this duty to the public or to his employees, he must be liable. His possession is for twenty years, obtained not in furtherance of any trust or duty, but as an experiment to enable himself and certain corporations to determine whether a consolidation, under the laws of this State, of the Ogdensburg and Lake Champlain Railroad with others may not be expedient.

Without dwelling upon these considerations, however, I think the fact that the defendant is neither the receiver of the road, nor its trustee, that his position is purely voluntary, and that he has entered upon it by contract, are enough to determine this appeal in favor of the plaintiff.

The judgment of the Supreme Court should be reversed, and a new trial granted, with costs to abide the event.

CHURCH, Ch· J., MILLER and EARL, JJ., concur; FOL-GER, J., concurs on the ground that defendant assumed as an individual to take and manage the road, and that case was not like that of *Cardot* v. *Barney* (63 N. Y., 281); RAPALLO and ANDREWS, JJ., do not vote.

Judgment reversed.